## GRANNIS vs. HOOKER.

*Recovery of moneys paid upon fraudulent misrepresentations.*

A party who paid money in pursuance of a contract for a speculative purpose, cannot recover the money on the ground that he was led into such contract and payment by fraud, where, after discovery of the fraud, he continued to claim and exercise his rights under the contract, until the investment proved unsuccessful.

APPEAL from the Circuit Court for *Fond du Lac* County.
Action for money had and received. Answer, a general denial. The substance of the facts proven at the trial is stated in the opinion. The moneys paid by plaintiff were paid to defendant as treasurer of the association mentioned in the opinion. On motion of the defendant a nonsuit was granted; and the plaintiff appealed from the judgment.

*Gerrit T. Thorn,* for appellant.

*Gillett & Taylor,* for respondent, cited *Cobb v. Hatfield,* 46 N. Y., 533; *Masson v. Bovet,* 1 Denio, 69; *Baker v. Robbins,* 2 id., 136; *Voorhees v. Earl,* 2 Hill, 288; *Hogan v. Weyer,* 5 id., 389; *Weed v. Paige,* 7 Wis., 503; *Hendricks v. Goodrich,* 15 id., 679; *Hollenback v. Shoyer,* 16 id., 499; *Mann v. Stowell,* 3 Chand., 243; Kerr on Fraud, 342, 343.

COLE, J. This action was brought to recover back five hundred dollars, the amount which the plaintiff subscribed and paid for an interest in an oil well. These parties, with many others, were subscribers to a fund raised for the purpose of buying oil lands, and the defendant was appointed on the committee to go to Virginia and examine some oil lands which the subscribers had thought of purchasing of one Brown. The committee did not purchase the Brown lands, but got the refusal of another piece of property, called the Atwater well. The committee reported, at a meeting of the subscribers, that they had been offered one-twentieth of the well for $15,000; and, upon the assumption that this interest would cost that amount,

the plaintiff paid his $500. But it appeared that while the owner of this one-twentieth agreed with the committee to sell that interest for $15,000, he had a further understanding with them that if they would raise or pay that amount for the property, he would give them a bonus of $4,500. The purchase was in fact made for $10,000, and was so reported by the committee to the plaintiff and his associates, who had the advantage of the purchase at that price. But the plaintiff claims that he was imposed upon and damnified by the suppression of the fact on the part of the defendant and his two associates on the committee, that by the first proposition to purchase the one-twentieth interest at the sum of $15,000, they were to have a bonus of $4,500.

Assuming, for the purposes of this case, that the plaintiff would not have subscribed and paid over the $500, had he known the whole truth in regard to the first proposition, and the agreement by the vendor to pay this bonus to the committee, still we are satisfied that upon the facts disclosed in the evidence there can be no recovery. For the plaintiff was informed of all the material facts relating to that transaction immediately after the defendant and the other members of the committee returned from making the purchase, and still he chose to retain his interest and take his chances on the success of the speculation. When the committee reported that they had made the purchase for $10,000, the basis was changed, and the plaintiff retained his share. He not only concluded to retain his share, but he continued to co-operate with his associates in the prosecution of the enterprise and in the management of the oil property, for three years thereafter. The subscribers were organized into a company, and the plaintiff voted at their meetings, acted as director, enjoyed the benefits of the business, received his share of the oil dividends, and participated in the business all the way through, until the golden bubble burst, leaving nothing but disappointment and loss. And now he seeks to recover back from the defendant the

amount of his subscription because of some fraud practised upon him in the early stage of the enterprise, and which he had long known. This he cannot do. The law is well settled that a party must elect as soon as he discovers the fraud practised upon him, whether he will abide by the contract or not. He cannot adopt the contract if it proves to be beneficial and profitable, and also have the right to repudiate it if it proves to be a bad speculation. The law is thus stated by a learned author: "The buyer may not lie by, and treat the property as his own, and afterwards reject it. His acquiescence in the sale, although tacit, after discovery of the fraud, will be considered as an election to confirm it; and this result will not be affected by the fact of his subsequently discovering a new incident in the fraud, for this would not confer a new right to rescind, but would merely confirm the previous knowledge of the fraud." Benjamin on Sales, 336; *Campbell v. Fleming et al.*, 1 Ad. & El., 40; *Cobb v. Hatfield et al.*, 46 N. Y., 533. And as it appears that the plaintiff, after full knowledge of the alleged fraud and imposition, retained his interest and dealt with the property, he has now lost his right of rescission and to recover back the amount of his subscription. The judgment of nonsuit is correct and must be affirmed.

*By the Court.*— Judgment affirmed.