THOMAS BEARE v. J. A. WRIGHT AND E. C. BATES.

Opinion filed January 9, 1905.

**Deceit — Measure of Damages.**

1. In an action to recover damages for false and fraudulent representations, by which the plaintiff had been induced to exchange real property for stock in a corporation, and had affirmed the contract after discovering the deceit, the measure of plaintiff's recovery, in the absence of a claim for special or exemplary damages, is the difference in value between what was received or parted with, as the case may be, and what would have been received or parted with, had the representations been true.

**Misrepresentation of Price Paid for Property, in the Absence of Fiduciary Relation or Contract, Not Actionable Deceit.**

2. Misrepresentations of the price paid for property by the vendor or others do not constitute actionable deceit, in the absence of fiduciary relations between the parties, or other facts or circumstances giving rise to an express or implied agreement that the price paid should determine the price in the contract.

**Special Verdict Insufficient to Support Judgment — New Trial.**

3. Where the facts found in a special verdict are insufficient to support the judgment for plaintiff, by reason of the absence of findings on matters in dispute essential to the complete determination of the issues, a new trial must be granted.

Appeal from District Court, Grand Forks county; *Fisk, J.*

Action by Thomas Beare against J. A. Wright and E. C. Bates. Judgment for plaintiff. Defendants appeal.

Reversed.

*Tracy R. Bangs,* for appellant.

Where one is deceived or defrauded, he can recover as damages the difference between the value of what he would have obtained had the statement been true and the value of what he received. Fargo G. & C. Co. v. Fargo G. & E. Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593. The instruction, "If you believe from the evidence that any witness has willfully sworn falsely as to any material issue in the case, then you are at liberty to disregard his entire testimony, except in so far as it has been corroborated by other credible evidence or by the facts and circumstances proved on the trial," was erroneous. Roth v. Wells, 29 N. Y. 471; Wells on Quest. Law and Fact, pp. 279 and 425; Blashfield Instr. to Jury,

p. 566; Hurlbut v. Leper, 81 N. W. 631; State v. Sexton, 72 N. W. 84; Minich v. People, 9 Pac. 4; Fraser v. Haggerty, 49 N. W. 616 (Mich.); People v. Sprague, 53 Cal. 491; Wilkins v. Earle, 44 N. Y. 172; The Sanctissima Trinidad v. The St. Ander, 7 Wheat. 283; Gillitt v. Wimer, 23 Mo. 77; People v. Strong, 30 Cal. 151.

## ON REARGUMENT.

A material representation is one that relates to condition, kind and quality of the property at the time it is described, and which is believed and relied on by the persons to whom it is made, and which moves and induces them to act in a manner that they would not have acted had such representations not been made. The representation of the price paid for the stock by the parties named, standing as it does alone and not associated with any other representations of the condition, quality or kind of the property purchased, or any other matters affecting its value, is of a matter wholly collateral to the subject matter of the transaction, and will not constitute a basis for recovery for deceit in a material matter. Blair v. Buttolph, 33 N. W. 349; Palmer v. Bell, 85 Me. 352; O'Brien v. Lugues, 81 Me. 46; Hedden v. Griffin, 49 Am. Rep. 25; Fulton v. Hood, 75 Am. Dec. 664; Am. B. & L. Assn. v. Boer, 67 N. W. 500; Medbury v. Watson, 6 Met. 259; Hemmer v. Cooper, 8 Allen, 334; Way v. Ryther, 42 N. E. 1128; Cooper v. Lovering, 106 Mass. 77; Gasnett v. Glazier, 43 N. E. 193; Halbrook v. Conner, 60 Me. 578, 11 Am. Rep. 212; Bishop v. Small, 63 Me. 12; Bourn v. Davis, 76 Me. 223; Long v. Woodman, 58 Me. 49; Martin v. Jordon, 60 Me. 531; Ellis v. Andrews, 56 N. Y. 83; Banta v. Palmer, 47 Ill. 99; Noelting v. Wright, 72 Ill. 390; Tuck v. Dowing, 76 Ill. 71; Dillman v. Nadelehoffer, 7 N. E. 88; Hawk v. Brownell, 11 N. E. 416; Graffenstein v. Eppstein, 33 Am. Rep. 171; Barns v. Mahannah, 17 Pac. 319; Sowers v. Parker, 51 Pac. 888; Cole v. Smith, 58 Pac. 1086; McKenzie v. Seeberger, 76 Fed. 108.

*Frank B. Feetham* and *Scott Rex,* for respondents.

The actual damage sustained by the respondent in this case was the difference in value between what he got and what he parted with; therefore the rule given the jury by the court was correct. Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139; Wallace v. Hallowell, 56 Minn. 501, 58 N. W. 292; Redding v. Godwin, 44 Minn.

355, 46 N. W. 563; Tacoma v. Tacoma Light & Water Co., 50 Pac. 55; Glaspell v. Nor. Pac. R. Co., 43 Fed. 900; Zeiley v. Palliser, 80 Hun. 603; High v. Berret, 148 Pa. St. 261, 23 Atl. 1004; Connor, v. Levinson (Mich.) 73 N. W. 232; Rockerfeller v. Merritt, 76 Fed. 909; Weaver v. Shriver (Md.) 30 Atl. 189; Nashua Sav. Bank v. Burlington Elec. Co., 100 Fed. 673; Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. Rep. 39; Sigafus v. Porter, 179 U. S. 116.

## ON REARGUMENT.

The true rule is: That whether a representation of value is or is not actionable, depends entirely upon the facts and circumstances of the particular case, which is simply another way of stating that such a false representation is actionable, if it be the inducing cause. The following cases sustain the contention that the misrepresentation in question was material and the basis for damages: Sanford v. Handy, 23 Wend. 260; Smith v. Countryman, 30 N. Y. 655; Miller v. Barber, 66 N. Y. 558; Coles v. Kennedy, 46 N. W. 1088 (corporate stock, subscription by others at same rate); Dorr v. Cory, 78 N. W. 682 (a "ground-floor" case); Stoney Creek Woolen Co. v. Smalley, 69 N. W. 722 (purchase of real estate); Moon v. McKinstry, 65 N. W. 546 (purchase of real estate); French v. Ryan, 62 N. W. 1016 (purchase of corporation stock; representation as to subscriptions to stock by others); Zang v. Adams, 48 Pac. 509 (purchase of corporation stock; representation as to cost of the property); Mountain v. Day, 97 N. W. 883 (sale of land); Shelton v. Healy (Conn.) 50 Atl. 744 (purchase of corporation stock; representation it was worth par); Stoll v. Wellborn (N. J.) 56 Atl. 894 (representation that whiskey had certain market value); Andrews v. Jackson, 168 Mass. 266 (that a note was as good as gold); Coulter v. Clark, 66 N. E. 739 (that the stock was as good as bank stock, and that promoter was himself a subscriber on the same terms); Coles v. Kennedy, 46 N. W. 1088; Teachout v. Van Hoesen, 40 N. W. 96; Byers v. Maxwell, 73 S. W. 437.

ENGERUD, J. This is an appeal from a judgment for plaintiff in an action to recover damages for alleged deceit in the exchange of property. The case was submitted to the jury for a special verdict, upon which judgment was ordered and entered against these appellants. A motion for new trial was made, based in part upon a   statement of the case specifying as grounds for a new   trial

numerous errors of law, and the insufficiency of the evidence to justify some of the findings of the jury, and the insufficiency of the verdict to support the judgment. The motion for a new trial was denied. This appeal is from the judgment.

The appellants contend that the facts found by the jury are insufficient to sustain the judgment, and we think the point is well taken. The facts upon which plaintiff must base his right to recover are those established by the admissions in the pleadings and by the special verdict. So far as material on this appeal, the pleadings disclose substantially the following facts: On or about December 28, 1901, respondent purchased and received from the appellants 750 shares of stock in a coal mining corporation in which the appellants were stockholders. The par value of the stock was $100 per share, but it was sold to the respondent at a valuation of $20 per share, or $15,000; and in exchange for said stock he sold and conveyed to the appellants a lot and business block owned by him, worth, exclusive of incumbrances, $15,000. The respondent did not avail himself of the right to rescind the transaction when he discovered the alleged fraud on the part of appellant. He retained the stock and has affirmed the contract. He seeks to recover compensation for the loss which he avers he has suffered by reason of the falsity of the representations of the appellants.

All that the jury found touching misrepresentation by these appellants appears in the following questions and answers of the special verdict: " Question 5. Did the defendant Wright represent to plaintiff, with intent to induce him to purchase said stock, that defendants Pringle and Bates, or either of them, had purchased stock of said corporation at the price of $20 per share, for which they had paid the sum of $20,000? Answer. Yes." In answer to question 6 the jury found that Bates made the same representation set forth in question 5. "Question 9. Did the defendant Wright represent to plaintiff, with intent to induce him to purchase such stock of said corporation, that said corporation then had in its treasury a large amount of money available for the development of the mine of said corporation? Answer. Yes." In response to question 10 the jury found that Bates did not make the representation embodied in question 9. In response to other questions the jury found that the representations found to have been made were known by the persons making them to be false, and that plaintiff relied thereon, and was induced thereby to purchase the stock.

The only finding as to damage was the following: "What detriment did the plaintiff suffer by reason of purchasing such stock? Answer. $9,995.75." The form of this question indicates the erroneous theory upon which the case was submitted to the jury. Bearing in mind that the plaintiff had voluntarily affirmed the trade after knowledge of the alleged deceit, it will be seen that the jury were asked to award the plaintiff compensation not solely for the deceit, but also for the plaintiff's own folly in adhering to a bad bargain. The jury were instructed that the measure of damages was the difference between the actual value of the stock purchased and the value of the property given in exchange. It was undisputed that the real property traded for the stock was worth $15,000. The method by which the jury were instructed to arrive at the answer to the question as to damages is shown by the following instruction:: "The proof shows that at this time (December 28, 1901) there were 9,100 shares of the capital stock of this corporation outstanding, and each of such shares was therefore worth and of the value of the one ninety-one hundredth part of the entire assets of the corporation. Having, then, first determined the actual market value of the entire assets and business of said company at the time, you will divide such value by 9,100, the number of shares of stock then outstanding. This will give the actual value of each of such shares of stock at that time. Plaintiff purchased 750 shares of such stock, at the price of $20 per share. If you find that said stock at said time was worth less than $20 per share, then the difference between what you find to be the actual value of each share and $20 will be the damage that plaintiff sustained on each share, and 750 times this will be the total sum at which you will assess plaintiff's damages in answer to the above question." These instructions were excepted to by the defendants, and are assigned as error.

The business of this corporation was in an undeveloped state. It owned a large quantity of land in the lignite coal belt, and that land was the principal part of its tangible assets. It was unknown as yet whether the enterprise would be a profitable one or not. In other words, it was a purely speculative venture. It was undisputed that the plaintiff knew it to be such when he bought the stock, and that one of the principal inducements for him to buy the stock was the hope of great and sudden wealth, which the investment promised to yield if the enterprise should prove to be a profitable speculation. It appears from the record of the evidence

admitted and excluded, and the instructions of the court, that in determining the value of the stock the jury were permitted to take into consideration only the actual net value of the tangible assets of the corporation. It is apparent that, if the respondent's theory of this case shall prevail, the result will be that respondent will have all the advantages of the speculative features of the enterprise, without assuming all the risk of such a speculation. His position is precisely the same as if he were to claim a right to share in the distribution of prizes at a lottery without paying for the chance. It is no answer to this proposition to say that respondent would not have engaged in the enterprise if he had not been deceived by the appellants. The unanswerable objection to that argument is that respondent voluntarily chose to adhere to the bargain, and retain all the benefits and advantages of the speculation, after he knew he had been deceived. He thereby forever estopped himself to claim any compensation for loss resulting from the making of the trade. It was an affirmance of the contract. Whether the bargain was good or bad, he must abide by it and take the consequences of his speculation. He cannot affirm the contract to the extent of the actual, present value of the tangible property received and repudiate the speculative feature of it. Upon the discovery of the deceit he had his election to rescind or affirm, but he could not rescind in part and affirm the remainder. An affirmance in part validated the entire contract. Rev. Codes 1899, section 3934; Grannis v. Hooker, 31 Wis. 474. Having thus validated the contract, the only remedy left to the respondent was to seek compensation in damages for the loss resulting from the falsity of the representations upon the faith of which he made the trade. The rule by which such damages are to be measured, where no special or exemplary damages are claimed, was announced by this court in Coke Co. v. Electric Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, to be the difference between what the property received would have been worth if as represented, and what is was actually worth at the time of the sale. In other words, the measure of damages for deceit where the contract is affirmed is precisely the same as for a breach of warranty in a contract of sale. Respondent argues that the rule adopted and applied in that case is not a universal rule of general application, but is applicable only where the circumstances are like those in that case. Counsel cites section 4997, Rev. Codes: "For the breach of an obligation not arising from con-

tract, the measure of damages, except when otherwise expressly provided in this Code is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." And section 3941, Rev. Codes 1899: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damages that he thereby suffers." He further cites section 3942, Rev. Codes 1899, defining actionable deceit, and section 3848, Rev. Codes 1899, defining actual fraud, and calls attention to the fact that actionable deceit and actual fraud are defined by the statute in the same language. From these provisions of the code the conclusion is deduced that in all cases of actual fraud the defrauded party can waive rescission and recover damages, and that such damages are to be measured by the difference in value between what he received and what he parted with, regardless of the nature of the false representations. According to respondent's theory, it matters not whether the representations were such as to affect the value of the subject matter of the contract, or not. If they come within the general definition of actual fraud, and the contract was induced thereby, the victim of the deceit can recover damages measured by the rule he has stated.

The provisions of the Civil Code cited by counsel are merely declaratory of well-established common law principles. Deceit is actual fraud, and where the apparent consent of one party to a contract has been induced by the actual fraud of the other the contract is voidable. It is voidable not because of any supposed pecuniary damage done to the defrauded party, but because the consent of the latter was not free. Rev. Codes 1899, sections 3836, 3841-3844. And fraud, actual or constructive, renders a contract voidable for the same reason that mistake, undue influence, duress, etc., have the same effect. Sections 3941, 3942, Rev. Codes 1899, merely declare that actual fraud is a tort for which the guilty party is liable to the injured party if any damage has been suffered by the latter. In other words, actual fraud, with damage, is a good cause of action, and constitutes actionable deceit. These statutory declarations of general principles throw no light on the precise question in this case. It is conceded that a person guilty of deceit is liable for all damages proximately resulting from the wrong. The question to be determined is what loss, if any, has the plaintiff suffered as the proximate result of the false representations? Re-

spondent asserts that he was inveigled into the speculation by the deceit of the appellants, and therefore the false representations are the proximate cause of the loss he has suffered. The argument is more plausible than sound. While it is true that he was inveigled into the speculation under a false impression of the facts, it is also conceded that he voluntarily elected to retain his interest in the enterprise after he was aware of the defendants' misrepresentations, and notwithstanding that he could have escaped all the consequences of a bad speculation by withdrawing from it by rescission. It is therefore clear that that part of the loss which would have resulted from the making of such a trade on the same terms without deceit is due to plaintiff's own folly, and is not properly chargeable to the false representation.

An instructive case on this subject is that of Page v. Parker, 43 N. H. 363, 80 Am. Dec. 172. The plaintiff had been induced by false representations to purchase an interest in a marble quarry, and pay therefor a sum much greater than its actual value. The defendants had made many representations. Some were false, some true, and others immaterial. The plaintiff sued to recover damages for deceit. The court held that the measure of damages in such cases is the difference between the value of the property as it actually was, and its value as it would have been if it were such as it was represented to be *in those particulars in relation to which the false and fraudulent* representations were made. The qualifying clause which we have italicized was said to be advisable in order to make it clear to the jury that the damages must be confined to such items of loss as were proximately caused by the representations which were false and material. To illustrate: If there were ten material representations, and only one was false, the plaintiff was entitled to compensation only to the extent that the value of the quarry was diminished by the nonexistence of the one fact which was falsely represented to exist. In Van Epps v. Harrison, 5 Hill, 63, 40 Am. Dec. 314, a good illustration of the same proposition appears. The defendant had given his bond for an interest in certain land, which was supposed to be very valuable as a town site. The price paid for the land was far in excess of its real value, having been based upon "boom" prices of land then prevailing. The defendant, among other things, claimed that the plaintiff had been guilty of deceit in the sale by falsely representing that the land was even, level and suitable for building purposes, and required

no grading.   Justice Bronson, in stating the measure of damages to be applied in that case, used this language: "As the land, whether the representations were true or false, was in reality worth only a small part of the price which the defendant agreed to pay, there may be some difficulty in answering the question. * * * We must not go back to the date of the contract for the price, and then come down to the present day for the actual value of the land, and charge the plaintiff with the difference.   The defendant must bear the consequences of the prevailing delusion about prices and new towns under which the purchase was made.   On the other hand, the plaintiff cannot say that his fraud has worked no injury, because everybody has now found out that the land never was worth anything for the purpose of building a town upon it.   The cause must, as far as practicable, be tried just as it would have been tried the day after the contract was made, if the question had arisen at that time.   The jury must assume, what the parties then believed, that the land was valuable as the site for a town, and then inquire how much less the land was worth for building purposes, taking the surface as it actually existed, than it would have been worth for those purposes had the plaintiff's representations concerning the surface been true."   We believe these cases are sound and in accord with the overwhelming weight of authority. They illustrate the application of the rule announced by this court in Fargo Coke Co. v. Fargo Gas & Electric Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, in cases where the circumstances were analogous to those presented by the case at bar.   We can conceive of no reason why the circumstances of this case should call for the application of different principles in determining the rights    and liabilities of the parties than are applied in other cases of deceit. There are cases which seem to make such a distinction.   Among them may be mentioned Crater v. Binninger, 33 N. J. Law, 513, 97 Am. Dec. 737; Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279; Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. Ed. 113; Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139, 20 Am. St. Rep. 540; High v. Berret, 148 Pa. 261, 23 Atl. 1004.   These cases seem to hold that in such cases as this the measure of damages is that adopted by the trial court—the difference in value between what was parted with and what was received.   These cases seem to proceed upon the theory advocated by the respondent in this case— that the entire loss resulting from a contract induced by false rep-

resentation is proximately caused by the deceit, because the contract would not have been made if deceit had not been practiced. For the reasons hereinbefore stated, that theory is, in our opinion, erroneous. The first case in this country which we can find in which such a theory is advanced is that of Crater v. Binninger, 33 N. J. Law, 513, 97 Am. Dec. 737, where Chief Justice Beasley confidently asserts that the rule is well established. The chancellor, however, wrote a separate opinion in that case, from which it appears that he differed from the chief justice as to the ordinary rule of damages in cases of deceit. The chancellor proceeds to show that the ordinary measure of compensation for deceit is the same as for breach of warranty, but concludes his opinion with the following remarkable proposition: "In this case Crater was willing to go in with Binninger at the cost price. Had Binninger told him truly that the cost price was eighteen thousand dollars, he would no doubt, have been willing to go in at that price, and would have paid at that rate, and, if any subsequent loss was sustained, would have had no claim against Binninger; and the true measure of damages appears to me to be the excess which he was induced to pay by the false and fraudulent representation of Binninger. If that was the difference between eighteen thousand dollars and twenty-eight thousand dollars, the one-eighth would be one thousand two hundred and fifty dollars, which, with interest, would be the real damage. And the plaintiff below would be entitled to recover these damages, although he had made double the amount out of the enterprise as clear profit. If, however, the jury would believe that Crater, if he had been told the real price, would not have entered into the transaction at that price, but would have taken a share in the lands only at the higher price, then his embarking in the transaction at all was the result of the fraud of Binninger, and the rule of the judge at the trial was the correct one, but it should have been so stated to the jury." If we understand the chancellor's language correctly, it was his opinion that in such a case the jury should be left to speculate as to the probable course of conduct which the injured party would or would not have pursued under one or the other supposed state of facts, and the measure of compensation would depend upon what the jury conjectured the plaintiff would have done if he had known the truth. As both opinions were for reversal of the trial court, it is impossible to tell which of the two opinions received the sanction of the majority of the court. In Smith v.

Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279, the opinion of Chief Justice Beasley in Crater v. Binninger is cited as authority. As an additional reason for adopting that rule, Chief Justice Fuller said that the defendant should not be held liable for "the expected fruits of an unrealized speculation." If it were true that the other rule imposed such liability, it is obvious that the argument of the chief justice would be fatal to the universal rule prevailing in case of breach of warranty. In cases of deceit or for breach of warranty, as well as in all other actions in tort or on contract for the recovery of damages, conjecture or speculation as a basis for estimating damages are excluded, for reasons familiar to the profession; and consequently the prevailing rule in breach of warranty and deceit does not in fact give the injured party "the expected fruits of an unrealized speculation." The decision in Smith v. Bolles was followed and approved in Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. Ed. 113. The same doctrine seems to have been given root in England by the case of Peek v. Derry, 37 Ch. D. 541, decided in 1887. That case was reversed by the House of Lords (Derry v. Peek, L. R. 14 App. Cas. 357) on the ground that the facts did not constitute actionable deceit and hence there was no occasion to express any opinion as to the propriety of the measure of damages adopted in the lower court. The American cases which have adopted the rule advocated by Chief Justice Beasley in Crater v. Binninger, supra, seem to have been based upon the authority of Crater v. Binninger, Smith v. Bolles, and Peek v. Derry, supra. The weight of authority as well as the better reason is against the rule supported by these cases. See cases cited in Fargo Gas Co. v. Electric Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593; Sutherland on Damages (3d Ed.) vol. 4, p. 3401, note 1.

It is plain to be seen that the rule advocated in the cases mentioned in some instances deprives the plaintiff of full compensation for the loss of what his bargain entitled him to, and in others imposes upon the defendant liability for losses not attributable to his fault. That rule sets up an arbitrary measure of damages, which violates that cardinal principle of the law of torts that the party at fault shall be held liable only for just compensation for the detriment proximately caused by his wrongful act. That principle is expressed in our Civil Code by section 5014, Rev. Codes 1899, as follows: "Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an ob-

ligation (contract or tort) than he could have gained by the full performance thereof on both sides except in the cases specified in the subdivisions on exemplary damages and penal damages and in sections 4996, 5003 and 5004." (Breach of promise to marry, seduction and willful or grossly negligent injury to domestic animals.)

We can see no difficulty in applying to the facts of this case the same rule which was applied in Gas Co. v. Electric Co., supra. Compare what has been received with what would have been received if the facts had been as they were represented to be, or, if the deceit affected the amount of money or property parted with, compare the value of that property with what should have been given if there had been no deceit. The difference is the measure of compensation for plaintiff's loss if there are no penal or exemplary damages. It is apparent that the speculative feature of the transaction is common to both terms of the equation, and is therefore eliminated from the problem.

It follows from what has been said that the findings of the special verdict are insufficient to support the judgment. It is apparent that the representation as to what others paid for the stock did not affect its value. It has not been found that there were any fiduciary relations existing between the parties, or that there were any other facts or circumstances giving rise to an implied agreement that the price paid by the vendor or others should be the price to the plaintiff. It is not found or admitted that there was any express contract to that effect. In the absence of special circumstances of that nature, a mere false statement as to the price paid by the vendor or others is not actionable deceit. Hauk v. Brownell, 120 Ill. 161, 11 N. E. 416; Teachout v. Van Hoesen, 76 Iowa, 113, 40 N. W. 96, 1 L. R. A. 664, 14 Am. St. Rep. 206; Kilgore v. Bruce, 166 Mass. 136, 44 N. E. 108; Davenport v. Buchanan, 6 S. D. 376, 61 N. W. 47; Coulter v. Clark, 66 N. E. 739; Sanford v. Handy, 23 Wend. 260; Smith v. Countryman, 30 N. Y. 655; Ellis v. Andrews, 56 N. Y. 83, 15 Am. Rep. 379; Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, 36 Am. St. Rep. 701; Miller v. Barber, 66 N. Y. 558; Hubbell v. Meigs, 50 N. Y. 480; Medbury v. Watson, 6 Metc. 246, 39 Am. Dec. 726; Hemmer v. Cooper, 8 Allen, 334; and other cases cited in notes 4 and 5, p. 492, Bigelow on Fraud.

To avoid any misapprehension from the use of the term "fiduciary relation" in speaking of the special circumstances under

which a misrepresentation as to cost or value may constitute deceit, we will say that we do not use that term in its technical sense. We apply it to any situation where trust and confidence are reposed by one party in another under such circumstances as to impose on the person trusted the obligation to act in good faith.

It has been said that the courts of Massachusetts and Maine have held that a misrepresentation as to cost is not material, and that those courts are at variance with the courts of New York and others. Bigelow on Fraud, p. 492. This loose expression has led to the erroneous idea that some courts—especially those of New York—have held that a mere misrepresentation of cost may constitute actionable deceit. The language of Justice Bronson in Van Epps v. Harrison, 5 Hill, 63, 40 Am. Dec. 314, seems to give color to this idea. The learned justice seems to have entirely overlooked in that case the fact that the plaintiff had either expressly or impliedly agreed that the defendant and the other persons who contributed to the purchase price were to be let in "on the ground floor" in the speculation, on equal terms with the plaintiff, and were therefore entitled, under the contract, to receive their respective shares of the land on the basis of the price paid by the plaintiff. In other words, the terms of the contract itself made the price paid by the vendor a material fact, and hence the misrepresentation as to the price paid was clearly actionable deceit. It was doubtless for this reason that the majority of the court overruled Justice Bronson. Analysis of the other cases in New York and elsewhere, we think, will disclose that there is in fact no real difference of opinion as to when a misrepresentation as to the price paid by the vendor or others will or will not constitute actionable deceit. However inaccurately the idea may be expressed, the rule as exemplified by all the cases seems to be fairly uniform that a mere representation as to the price paid by the vendor or others is not actionable in the absence of special circumstances such as those we have mentioned. The finding that Wright willfully misrepresented the amount of funds in the treasury convicted the defendant Wright of actionable deceit, but there was no finding or admission in the pleadings or evidence from which it can be ascertained how much he falsely exaggerated the assets in this respect. There are therefore no means of determining the amount of loss by reason of this misrepresentation.

By reason of the erroneous theory as to the measure of damages upon which the case was tried, the findings neither support the judgment, nor exonerate the appellants. There must therefore be a new trial. The view we have taken of the case renders it unnecessary to discuss the other assignments of error, as the questions presented by them are not apt to arise on another trial.

The judgment is reversed and a new trial granted as to both appellants. All concur.