B. W. EMANUEL, Appellant, v. FRANK ENGST and Mary Engst, Respondents.

(208 N. W. 840.)

**Vendor and purchaser — contract to purchase land held void where purchaser is induced to make same on premises of vendor that he will get city to buy gravel from purchaser.**

1. Section 3618, Comp. Laws 1913, forbids any officer of a city to be directly or indirectly interested in any contract, work or business of the city or in

Note.—(1) Contracts for sale of land violative of public policy, see 27 R. C. L. 318.

(5) On measure of damages for fraudulent representations in the sale or exchange of real estate, see annotation in 8 L.R.A.(N.S.) 804; 16 L.R.A.(N.S.) 818; 27 R. C. L. 382.

the sale of any article the expense or price of which is paid from the city treasury. Section 3760, Comp. Laws 1913, penalizes participation or interest in any contract under authority of a city by an officer of the city, and declares such contract to be void. *Held* that a contract for the purchase of land which the purchaser is induced to enter into by reason of the promise and assurance of the vendor who is mayor of the city in which such land is situated that he will procure the city to buy from the purchaser of the land at least three thousand dollars worth of the gravel thereon for use in city improvements is illegal, contrary to public policy, and void.

**Vendor and purchaser — one consideration for contract being illegal and forbidden law will give no relief but will leave parties where it finds them.**

2. Where one of the considerations for a contract of purchase of land is illegal and forbidden, the whole contract is tainted with the illegality and void. Under such circumstances, the law will give no relief but will leave the parties where it finds them.

**Fraud — buyer of land may rely on representations of owner, of land as to its quality and is not bound to investigate same.**

3. Where a seller of land makes material representations as to the quality and character thereof intending that such representations shall be relied upon by the buyer, and it is not reasonably apparent to the buyer with the knowledge that he has or is charged with that they are false, he has the right to rely upon them and is under no obligation to investigate before doing so.

**Fraud — preponderance of evidence after allowances for presumption of honesty is sufficient to establish fraud.**

4. A preponderance of the evidence, after making due allowance for the presumption in favor of honesty and good faith is sufficient in ordinary cases to establish a charge of fraud. Guild v. More, 32 N. D. 432.

**Fraud — measure of damages is difference between actual and represented value of property.**

5. In an action for damages brought by the purchaser of land on account of false and fraudulent representations made by the seller as to the quality and character of the same, the measure of damages where the contract is affirmed is the difference between what the property would have been worth if as represented and what it actually was worth at the time of the sale.

Opinion filed August 26, 1925. On rehearing May 7, 1926.

Contracts, 13 C. J. § 440 p. 493 n. 18; § 451 p. 506 n. 79; § 471 p. 513 n. 40. Evidence, 23 C. J. § 1810 p. 59 n. 22. Fraud, 26 C. J. § 68 p. 1153 n. 93; § 77 p. 1167 n. 62; § 104 p. 1200 n. 18; p. 1203 n. 35; 27 C. J. § 128 p. 18 n. 33; § 160 p. 39 n. 82; § 199 p. 63 n. 87, 88; § 240 p. 91 n. 43; § 243 p. 92 n. 60. Vendor and

Purchaser, 39 Cyc. p. 1215 n. 75, 75 New; p. 1218 n. 94; p. 1259 n. 20; p. 1263 n. 39; p. 1268 n. 66; p. 1269 n. 69, 70.

Appeal from the District Court of Sargent County, *Wolfe, J.*
Reversed.

*Purcell & Slattery* and *H. B. Thompson,* for appellant.

It is accordingly well settled that false statements of a vendor of real estate in procuring an execution of a written contract for the purchase and sale thereof, which are neither attended nor followed by injury, will not sustain an action for deceit. Sonnesyn v. Akin & Babcock, 14 N. D. 248.

A person to whom false representations are made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence. 12 R. C. L. 371.

Actionable fraud cannot be predicated upon the mere expression of opinion, even though the statement is known to the party making it to be false, and it is made with intent to deceive. Williams v. Macfadden, 23 Fla. 143; Homer v. Perkins, 124 Mass. 431, 26 Am. Rep. 677; Parker v. Moulton, 114 Mass. 99, 19 Am. Rep. 315.

Statements by the vendor of property as to its condition, quantity, character, capacity, or adaptability to certain uses are generally regarded as mere expressions of opinion, and when such is the case, do not constitute fraud. 12 R. C. L. 277; Hickey v. Morrell, 102 N. Y. 454, 55 Am. Rep. 824, 7 N. E. 321.

Fraud is never presumed, and its existence must be established by clear and satisfactory proof. McClemman v. Plummer, 35 N. D. 269.

Pecuniary loss to the deceived party is absolutely essential to the maintenance of an action for fraud and deceit. Urtz v. N. Y. Central R. Co. 202 N. Y. 170, 95 N. E. 711.

An agreement to do something which the law forbids cannot be made the basis of a cause of action. Wald v. Wheelan, 27 N. D. 624; Stover v. Flower, 120 Iowa, 514, 94 N. W. 1100; Weston v. Esty, 22 Colo. 334, 45 Pac. 367; Swindell v. Bainbridge St. Bank, 3 Ga. App. 364, 60 S. E. 13.

*O. S. Sem* and *Kvello & Adams,* for respondents.

Where an action is founded upon an illegal contract, the law will

leave the parties where it found them, and grant no relief to either of them.   Collins v. Blantern, 1 Smith Lead. Cas. 630.

Whether or not facts showing that the contract sought to be enforced is illegal appears from the pleadings, and when the evidence discloses that the relation of the parties are illegal, the court will act on its own motion.   Hope v. Linden Park Blood Horse Asso. (N. J.) 34 Atl. 1070.

Upon the question of value of farm lands the opinion of farmers are admissible where they live in the vicinity of the land, are acquainted with its situation and quality and its adaptability for agricultural purposes, and state that they knew its value although they may not have been engaged in buying and selling land and have no knowledge of an actual sale of the land in question or of similar lands.   Schmidt v. Beisecker, 19 N. D. 35, 120 N. W. 1096.

The general rule is that estoppel must be especially pleaded where there has been an opportunity to do so.   10 R. C. L. 140 and cases cited.

A party who had an opportunity to plead an estoppel as a defense, but has failed to do so, cannot be permitted to assert such defense for the first time in the appellate court.   Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592.


NUESSLE, J.   This action is brought on a promissory note to recover the deficiency remaining after foreclosure and sale of the real estate security therefor.

The complaint sets out the making and securing of the note, the non-payment of the same when due, the foreclosure of the security, the deficiency remaining, and the failure after demand to pay the same. The defendants, answering, admit the making and securing of the note, the nonpayment thereof, the foreclosure and the deficiency; but plead, first, that the note was void because the transaction out of which it grew was illegal, contrary to public policy, and void; and further, by way of counterclaim, set up that the same was given in payment for land sold by means of false and fraudulent representations, and ask for damages.   The plaintiff, replying, specifically denied the new matters set up in the answer and counterclaim.

It appears that the plaintiff was the mayor of the city of Milnor.

He lived on the property out of the sale of which this litigation arose. This property comprised about fifteen and a half acres, and on it were a dwelling house and appurtenances. In the fall of 1919 there was some conversation between the parties relative to the sale and purchase of the property. In April, 1920, further negotiations were begun, and an agreement for sale and purchase was entered into. Under the terms of the contract then made, the price to be paid was $10,000, $2,000 cash and the balance in five years with interest at the rate of 5 per cent payable annually. In June the plaintiff, pursuant to the contract, executed his deed to the defendant Frank Engst for the property, and received back the note of the defendants for the unpaid portion of the purchase price, secured by mortgage on the property. The defendant Frank Engst was a contractor and builder. During the summer of 1920 he built a house on a portion of the tract thus bought. In October, 1920, he procured a release of the mortgage as to that portion of the tract on which the house was built, about two acres, in order that he might sell the same, and sold it for $5,000. In June, 1921, the defendants having failed to make the interest payments as required by the terms of their mortgage, the whole sum was declared due and payable, and foreclosure proceedings by advertisement were begun. There was no resistance to the foreclosure. The property was sold at sheriff's sale and bid in by the plaintiff for $5,000. The net proceeds of the sale were credited on the note. No redemption was made, and the property went to deed. In September, 1921, this action was begun to recover of the defendants on account of the deficiency on the note.

The facts as above stated are undisputed. The evidence of the defendants further tends to establish that the contract as entered into was induced by representations relied upon by defendants that the land in question was underlaid with a valuable bed of commercial gravel; that such representations were in fact false and fraudulent and were known by the plaintiff to be so; that the plaintiff was the mayor of the city of Milnor; that he represented that he would procure the city to require cement sidewalks to be laid and the streets of the city to be graded and improved, and that he would procure the purchase from the defendants by the city of at least $3,000 worth of the gravel on such premises; that there was no gravel on the premises and that none was purchased by the city; that in fact the premises so purchased were

worth, exclusive of the improvements, not to exceed $50 per acre. On the other hand, the evidence adduced by the plaintiff tended to show that there were no false and fraudulent representations made by the plaintiff to the defendant, and that there was no promise or inducement on the part of the plaintiff that the city of Milnor would purchase gravel from the defendant or that he, the plaintiff, would procure or endeavor to procure the city to do so.

The trial judge, in effect, ruled, and this ruling was acquiesced in by all parties, that the issues to be disposed of by the jury were, first, as a defense, whether the facts were such as to render the contract unenforceable as illegal, contrary to public policy, and void, and, second, if not, whether the defendants had been induced to enter into the same by reason of false and fraudulent representations as to the character of the premises purchased, and if so, the amount and extent of the damage incurred by reason thereof.

At the close of the defendants' case the plaintiff moved for a directed verdict on the ground that no defense had been made by the evidence as submitted on behalf of the defendants, and that there was not sufficient evidence to support the counterclaim. This motion was denied.

The trial court instructed the jury that if in fact the defendants were, as they claimed, induced to enter into the contract to buy the property by reason of the promise and assurance on the part of the plaintiff that the plaintiff would procure the city of Milnor to purchase at least $3,000 worth of gravel to be taken from the premises, in such event the contract was illegal, contrary to public policy, and void, neither party was entitled to relief, and the verdict must be for the defendants for a dismissal of the action. The court further instructed that if this defense were not established by the defendants, the jury should consider the matter of the counterclaim, and in that behalf instructed the jury that if they should find that the defendants were induced to enter into the contract of purchase of the land in question by reason of the false and fraudulent representations of the plaintiff as to there being a bed of commercial gravel thereon, the defendants were entitled to recover damages in an amount equal to the difference between what the property would have been worth if it had been as represented by the plaintiff, and what the property actually was worth at the time of the trial, with the representations shown to be false, and

such damages in favor of the defendants, if any were found, should be set off against the amount then remaining unpaid upon the note in suit and a verdict returned accordingly. The jury returned a verdict for the defendants. There was no special verdict or finding, and it is impossible to say whether the verdict as thus returned was based upon a finding by the jury that the defense of the invalidity of the contract was established or whether they found for the defendants on the counter-claim with damages in an amount equal to the deficiency unpaid on the note.

Subsequently and after verdict the plaintiff moved in the alternative for judgment notwithstanding the verdict or for a new trial, specifying, as ground for such motion, the insufficiency of the evidence to support the verdict, errors of law occurring during the course of the trial and error in the instructions to the jury. The motion was denied and judgment entered on the verdict. From the order denying such motion and from the judgment, the plaintiff perfects this appeal.

On this appeal the plaintiff challenges the sufficiency of the evidence to support the verdict, and complains of errors of law occurring during the course of the trial and on account of instructions given to the jury.

The plaintiff first contends that the answer fails to set up a defense, and that, in any event, the evidence is insufficient to sustain a verdict for the defendant, either on the defense or under the counterclaim.

The defense of illegality is at least inartificially pleaded. But the answer in this respect was held sufficient by the trial court,—and we think rightly so. It is undisputed that plaintiff was then the mayor of Milnor. The testimony of the defendant is that plaintiff represented that there was gravel on the land in quantities commercially valuable; that plaintiff himself could not sell it to the city because he was the mayor; that if the defendant would buy the land, plaintiff could and would cause the city to buy at least $3,000 worth of the gravel from defendant, and that with his (the plaintiff's) help the land was worth $10,000; that by reason of these representations and promises on the part of the plaintiff, the land was bought by defendant for $10,000. Section 3618, Comp. Laws 1913, forbids any officer of a city to be directly or indirectly interested in any contract, work or business of the city, or in the sale of any article, the expense or price of which is paid from the treasury. Section 3760, Comp. Laws 1913, penalizes

participation or interest in any contract by an officer of the city, and declares such contract to be void. If these things were so, the plaintiff was seeking to do by indirection what he could not directly do. Whether he intended to perform the agreement thus made can make no difference; nor the fact that it was not performed. The evidence tended to establish that one of the considerations for the contract of purchase was illegal and forbidden. And if so, thus the whole contract was tainted with illegality and void. "That which is bad destroys that which is good and they perish together." Trist v. Child (Burke v. Child) 21 Wall. 441, 22 L. ed. 623; State v. Wilson, 117 Am. St. Rep. 479 ·and note, 73 Kan. 334, 80 Pac. 639, 84 Pac. 737. Under such circumstances the law will give no relief, but will leave the parties where it finds them. Oakes Nat. Bank v. Farmers State Bank, 52 N. D. 49, 201 N. W. 696 and authorities cited; Oscanyan v. Arms Co. 103 U. S. 261, 26 L. ed. 539; Burke v. Child, supra; State v. Wilson, supra.

The plaintiff contends that the evidence is insufficient to support the verdict for three reasons: that there is no sufficient proof of such false and fraudulent representations as are actionable, or of reliance thereon by the defendant; that neither the matters of defense nor in support of the counterclaim are established by that degree of proof essential to establish fraud; that there is no sufficient proof of damages.

The evidence shows that there was a drainage ditch through the land. There was also an excavation adjacent. Where a small shallow hole had been dug on the land there were evidences of gravel. Further, the testimony of the defendant is that the plaintiff said that when the ditch was dug a bed of commercial gravel was disclosed; that the adjacent excavation was made for the purpose of obtaining gravel, and gravel was hauled therefrom. Further, that at the time the defendant examined the property he did so in the company of the plaintiff. The ground was then frozen and careful examination was difficult. The plaintiff told the defendant that it was not necessary to dig to ascertain if the gravel was there, because it was there. The representations thus made by the plaintiff were consistent with what the defendant says he observed, and the defendant insists that he believed and relied upon them. True, the plaintiff denies these things. But denial raised only a question of fact. If the testimony of the defendant was true, there was actionable fraud,—and it was for the jury to say where the

truth lay. The defendant may have been too credulous, but these statements were statements of matters of fact which were material to the transaction. If made, the defendant must have intended that they should. be believed and relied on. This was not merely "puffing." The law did not require a test hole to be dug, in the face of positive state- ments that gravel of such quantity and of such quality as to be com- mercially valuable was there. If the representations were made and it was not reasonably apparent to the defendant with the knowledge that he had that they were false, he had the right to rely upon them, and was under no obligation to investigate before doing so. Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066. See also 27 R. C. L. 372 et seq.; 39 Cyc. 1259 et seq.

Neither is there merit to the plaintiff's contention that the fraud claimed is not established by the requisite degree of proof. While the rule is that fraud must be clearly shown, nevertheless it may be estab- lished by a fair preponderance of the evidence, considering the pre- sumption in favor of honesty and fair dealing, which the law raises. The rule is stated in the syllabus to Guild v. More, 32 N. D. 432, 155 N. W. 44, as follows: "A preponderance of the evidence, after making due allowance for the presumption in favor of honesty and good faith, is sufficient in ordinary cases to establish a charge of fraud." See also Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300. In this case we think the question was fairly submitted to the jury. They were instructed as to where the burden lay. If the jury saw fit to believe the testimony of the defendant Engst rather than that of the plaintiff, they were warranted in making a finding of illegality and fraud.

The third contention as to the sufficiency of the evidence, touches the question of damages. Plaintiff insists that there is no evidence tending in any manner to establish what the value of the property would have been if as represented. The rule is that though false and fraudulent representations be made and relied upon and a contract induced thereby, nevertheless, the resulting fraud is not actionable unless damage is shown. Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026; Marshall- McCartney Co. v. Halloran, 15 N. D. 71, 106 N. W. 293. And the measure of damages is the difference between the value of the property

as in fact it was and the value that it would have had if as represented. Guild v. More, supra; Beare v. Wright, 14 N. D. 26, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Fargo Gas & Coke Co. v. Fargo Gas & E. Co. supra. As to the matter of values the record is very unsatisfactory. There is little competent evidence to establish either the value of the land as it actually was, or the value that the land would have had if as represented. Extended comment on the evidence in this respect is unnecessary, as in any event there must be a reversal on another ground.

The plaintiff further contends that the verdict as returned cannot stand for the reason that the fraud, if fraud there was, had been condoned and the right to claim damages waived; that it appears from the record after the defendant had become fully apprised as to the true quality and condition of the land, he obtained a release of the mortgage as to that portion thereof on which he built the house in order to sell the same, and raised no objection to the foreclosure when proceedings in that behalf were begun by the plaintiff. We think, however, it is not possible to say as a matter of law that there was any condonation and waiver on the part of the defendant. If there was fraud, the defendant, upon discovering it, had the right either to rescind the contract, or to affirm it and sue to recover damages sustained by reason thereof. See Sonnesyn v. Akin, supra; Dalheimer v. Lucia, 50 N. D. 78, 194 N. W. 925. Furthermore, though fraud was set up by the defendant in his answer, waiver was not pleaded by the plaintiff in his reply. The rule is that the facts constituting a waiver must be pleaded before the question may be submitted to the jury. See Dalheimer v. Lucia, supra. In any event, there could be no waiver in so far as the defense of illegality was concerned. See Frankel v. Hillier, 16 N. D. 387, 113 N. W. 1067, 15 Ann. Cas. 265, and cases cited; Oscanyan v. Arms Co. 103 U. S. 261, 26 L. ed. 539; McCowen v. Pew, 153 Cal. 735, 21 L.R.A.(N.S.) 800, 96 Pac. 893, 15 Ann. Cas. 630; Bank of Orland v. Harlan, 188 Cal. 413, 206 Pac. 75.

Lastly, the plaintiff predicates error on account of certain instructions given to the jury. The plaintiff urges that the jury were misdirected as to the measure to be applied in passing upon the defendants' claim for damages under his counterclaim. The court instructed as follows: "The measure of damages in this case—if you come to con-

sider this first defense—will be the difference between what the property would have been worth if it were as represented by Dr. Emanuel—if, of course, you find these representations were made—and what the property actually *is* worth as it *is* with the representations shown to be false." Further on in the instructions the court again said in directing how the damages should be measured: "You will then say what the difference is between the value of the land as it would have been if as represented and the actual value as it *is.*"

The sale of the property in question was made in April, 1920. The instant case was tried in November, 1923. The plaintiff's contention is, that three and one half years had elapsed between the time when the alleged false representations were made, and the contract of sale induced thereby entered into, and the time of the trial. That in the meantime land values had declined. That notwithstanding, the jury were told that the measure of damages was the difference between the value the land would have had if as represented and what it actually had as it was at the time of the trial. On the other hand, the defendants insist that the objection is merely technical; that there was no room for misunderstanding on the part of the jury. We cannot so view the matter, however. There is substance to this contention on the part of the plaintiff. In such a case, the measure of damages is the difference between the value of the property as in fact it was and the value it would have had if as represented. See Guild v. More, supra; Beare v. Wright, 14 N. D. 26, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066. The damage should be measured by the values as of the time of the alleged fraudulent transaction. But the instruction given was plain and unequivocal to the contrary. No other direction in that behalf was given to the jury. It is a matter of common knowledge that land values generally had declined during the period between 1920 and 1923. If the jury observed the rule as to the measure of damages laid down in the charge, the plaintiff must have suffered thereby. We are forced to the conclusion that the instructions complained of were erroneous and prejudicial.

The jury returned no special verdict or finding. They may have based the verdict as returned on their finding on the question of illegality of the contract, or, on their finding on the question of damages

on account of false and fraudulent representations. As we have heretofore said, it is impossible to tell on which branch of the case the verdict was returned. The judgment must therefore be reversed and the case remanded for a new trial. See McLeod v. Simon, 51 N. D. 533, 200 N. W. 790.

It is so ordered.

BURKE, JOHNSON, and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting in part). I concur in the principles stated in the syllabus; but not in the result reached in the foregoing opinion by the application of the principle stated in ¶ 5 of the syllabus. While the portions of the instructions set forth in the opinion are incorrect under the rule stated in ¶ 5, I do not believe that any prejudice resulted from the instructions as given. The evidence in the case related only to the value of the property at the time of the sale. There was no evidence, whatever, relating to the value of the property at the time of the trial or at any time subsequent to the time of the sale. When the instructions are construed as a whole it seems to me that the jury, in applying the same to the evidence in the case, could not have been misled but must have understood that in determining the amount of damages they must be guided by what the evidence showed the property to be worth at the time of the sale, and not by any opinion which they might have outside of the evidence as to the value of the property at the time the instructions were given. In other words, it seems to me that the jury must have understood that the measure of damages to be applied by them in arriving at a verdict in this case was the difference between what the property would have been worth if as represented, and what it actually was worth at the time of the sale.

## On rehearing.

PER CURIAM. In this case a rehearing was ordered and had. Further consideration of the case has wrought no change in the views of the members of the court. The former opinions will stand.

NUESSLE, BIRDZELL, JOHNSON, and BURKE, JJ., concur.