Jeanette STROM, Plaintiff and Respondent,

v.

Melvin STROM, Defendant and Appellant.

No. 7576.

Supreme Court of North Dakota.

March 23, 1956.

Kelsch & Scanlon, Mandan, for defendant and appellant.

Strutz, Jansonius & Fleck, Bismarck, for plaintiff and respondent.

MORRIS, Judge.

The plaintiff seeks a divorce from the defendant on the ground of cruelty. The defendant denies the allegations of plaintiff's complaint and counterclaims for annulment of the marriage which took place on February 25, 1954, on the ground that he was induced to enter therein by fraud and deceit practiced on him by the plaintiff.

The parties first met early in January 1953 when they were members of a group of six young people that attended a dance. They had sexual intercourse at that time. They had frequent dates together until the first or second week in March. On most of those occasions they had sexual intercourse. During that time the plaintiff was the wife of a man who was in military service. The defendant knew of the plaintiff's married status. In April 1953 the defendant quit his employment as a barber in Steele and went to live with his father on a farm near Hazelton. Shortly thereafter the plaintiff's husband returned to Steele and on July 16 the plaintiff and her husband went to the west coast. The plaintiff left her husband and returned to Steele on September 7, 1953. Shortly thereafter she instituted divorce proceedings which resulted in a decree of divorce on December 18, 1953. The plaintiff gave birth to a daughter on June 21, 1954. Thus far there is no dispute as to the facts. The defendant contends that he is not the father of this child and the plaintiff contends he is. There is no question that the parties resumed sexual intercourse during the latter part of 1953. The dispute is as to when this occurred. The plaintiff testified that intercourse occurred on October 24 and 25. The defendant, on the other hand, testified that the practice was not resumed until the night of November 21. Medical testimony establishes that if the plaintiff's testimony is correct the defendant could be the father of the child and that if his testimony is correct he is not the father.

The defendant testified that he did not see and was not with the plaintiff on October 24 and 25; that the first time he was with the plaintiff after she returned from the west coast was on November 7, 1953, when he met her in Bismarck and asked her to ride to Steele with him, which she did. On November 18 he took her dancing and to lunch in Bismarck. On neither of these occasions did intercourse take place. The plaintiff on the other hand testifies that on Saturday night of October 24 the defendant took the plaintiff from Bismarck to Steele where they were joined by a married couple named Thompson who went with them to a dance. They got back to Steele about 3 o'clock the following morning. Mrs. Thompson who is a cousin of the defendant corroborates this testimony. Mr. Thompson was in the military service at the time of trial and did not testify. The plaintiff further testified that after letting the Thompsons out of the car the plaintiff and defendant drove out into the country where an act of intercourse took place.

The father and mother of the plaintiff both testify that the defendant brought the plaintiff to Steele and stopped at their home on the evening of October 24. All of these witnesses fixed the date as being a Saturday night following the day on which the plaintiff started to work at Buttrey's store in Bismarck and it is established without dispute that she started to work there on October 19.

The defendant offered no evidence as to his whereabouts on October 24 and 25 other

than his own statement that he did not see the plaintiff on October 24 or 25. The trial court found for the plaintiff and determined that the child born on June 21, 1954, was the child of the defendant and decreed that the defendant pay the plaintiff the sum of $40 per month for support and maintenance of the child until she shall have reached the age of eighteen years or until she shall marry. He also awarded judgment for certain costs and hospital bills. From the judgment and decree the defendant appeals and demands a trial de novo.

The defendant testified that the plaintiff told him in January 1954 she was pregnant; that he was responsible for her condition; and that the child was expected to be born late in August. He believed her and relying upon her statements agreed to marry her, which he did on February 25. He now contends that these representations on her part were false with respect to his responsibility for her condition and that as a result thereof his consent to marry her was obtained by fraud and that he is therefore entitled to have the marriage annulled.

 The plaintiff states that she told him of her condition in December 1953; that her statement as to his responsibility is true; and that she told him the child would probably be born in July, which was the advice she had received from a doctor. The burden is on the defendant to prove the material allegations of his counterclaim that he was induced by fraud to enter into the marriage. Fraud is never presumed. Rather the presumption is that private transactions have been fair and regular. Section 31–1103, NDRC 1943. A marriage may be annulled where consent thereto has been obtained by fraud. Section 14–0401, NDRC 1943. But the fraud relied upon must be clearly shown. Reitsch v. McCarty, 35 N.D. 555, 160 N.W. 694; Emanuel v. Engst, 54 N.D. 141, 208 N.W. 840. In this case in order to establish a fraudulent inducement for the marriage the defendant must show that the child born in wedlock is not his child. All children born in wedlock are presumed to be legitimate.

Section 14–0901, NDRC 1943. The burden of proof to be carried by the defendant is heavy and it is not lightened by the fact that defendant freely admits that before marriage and before and after conception he had intercourse with the plaintiff on many occasions while she was the wife of another. In the trial court's memorandum opinion prepared before entry of judgment he points out that not only the presumption but the preponderance of the evidence favors the plaintiff's contentions. We agree with the trial court in this respect.

Judgment was entered on July 8, 1955, and on the following December 5 the defendant moved for a new trial on the ground of newly discovered evidence. In support of the motion the defendant produced affidavits of persons who would testify concerning his whereabouts on October 24 and 25, 1953, when the plaintiff says that he was with her. The most important affidavit among the six affidavits of proposed witnesses submitted in support of the motion is that of Charley Thompson who relates in some detail the whereabouts of the defendant and the affiant during the time in question. The substance of his statements is that he was with the defendant on the two nights of October 24 and 25, 1953, and all day Sunday, October 25, until about 1 o'clock in the morning of October 26 and that the defendant was not in Steele or Bismarck during any of this time. It may be noted that this affiant is not related to the Mrs. Thompson who testified for the plaintiff.

The affidavits of the five other proposed witnesses who are close relatives of the defendant corroborate in part the affidavit of Thompson in that the affiants state that Thompson visited at the farm home of the defendant's father and mother on October 25 and October 26 and that the defendant and Thompson were at this farm together during various parts of the time in question. In their affidavits the father and mother of the defendant also state that he was at home on October 24 until about 6:30 p. m. when he left with Thompson. The obvious purpose of the proposed new-

ly discovered evidence is to discredit the testimony of the plaintiff and her witnesses as to the occurrences of October 24 and October 25.

The trial court after reviewing these affidavits in a memorandum opinion entered an order denying the motion. The defendant appeals from this order as well as from the judgment. The trial court did not feel that diligence was used in procuring the evidence put forward in support of the motion and states pointedly that he does not believe the defendant's testimony.

 The rule that a motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the trial court and the appellate court will not interfere unless abuse of such discretion is shown is established by a long line of decisions of this court, the most recent of which are Haslam v. Babcock, 72 N.D. 581, 10 N.W.2d 239; Hochstetler v. Graber, 78 N.D. 90, 48 N.W.2d 15; Peterson v. Bober, 79 N.D. 300, 56 N.W.2d 331.

The evidence proffered in support of defendant's motion would in event of a new trial create a conflict with the evidence supplied by the plaintiff in connection with the crucial dates of October 24 and 25, 1953. When we consider the plaintiff's evidence, the presumption of legitimacy, and the admitted conduct of the defendant we cannot say that a different result would probably be reached upon considering the newly discovered evidence. Where newly discovered evidence is such that it does not appear likely to produce a different result on another trial, it is not an abuse of discretion to deny a motion for a new trial on that ground. Farmers' State Bank of Cathay v. Jeske, 50 N.D. 813, 197 N.W. 854; McGillivray v. First National Bank of Dickinson, 56 N.D. 174, 217 N.W. 159; Eckstrand v. Johnson, 40 N.D. 294, 168 N.W. 824. We find this rule to be applied in divorce actions in other jurisdictions. Shore v. Shore, 17 N.J. Super. 320, 86 A.2d 23; Hodges v. Hodges, 154 Neb. 178, 47 N.W.2d 361; Gullo v. Gullo, Sup., 67 N.Y.S.2d 568; Reynolds v. Reynolds, 33 App.Div., 625, 53 N.Y.S. 135; Whise v. Whise, 36 Nev. 16, 131 P. 967, 44 L.R.A.,N.S., 689; West v. West, 200 Ga. 115, 35 S.E.2d 914.

The preponderance of the evidence adduced at the trial clearly favors the findings of the trial court and the judgment rendered thereon. The newly discovered evidence, while of considerable weight, is such that we cannot say that it would make a different result likely or probable. The trial court acted within the bounds of his judicial discretion when he denied defendant's motion for a new trial. The judgment and order appealed from are affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ.