Thomas R. THIBODEAU and
Kathleen A. Thibodeau

v.

Samuel R. PIERCE, Jr., Secretary of
Housing and Urban Development.

Civ. A. No. 87–0319 L.

United States District Court,
D. Rhode Island.

March 30, 1988.

---

Mark H. Burnham, Providence, R.I., for plaintiffs.

Lincoln C. Almond, U.S. Atty., and Everett Sammartino, Asst. U.S. Atty., Providence, R.I., for defendant.

MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction, failure to state a claim and lack of venue. At issue is the power of a federal district court to review the determination by the Secretary of Housing and Urban Development that the value of a homeowner's labor in making improvements upon his home is not a "reasonable cost of improvement" within the meaning of Section 235 of the National Housing Act and the regulations promulgated thereunder. 12 U.S.C. § 1715z (1980 & Supp.1987); 12 U.S.C. § 1751(d)(2) (1980 & Supp.1987); 24 C.F.R. § 235.12.

The overall aim of the National Housing Act is to stimulate housing production and community development, so as to remedy the housing shortage and realize as soon as possible the "national goal ... of 'a decent home and a suitable living environment for every American family.'" 12 U.S.C. § 1701t (quoting Housing Act of 1949, 42 U.S.C. § 1441). To achieve these ends, Congress declared that "there should be the fullest practicable utilization of the resources and capabilities of private enterprise and of individual self-help techniques." 12 U.S.C. § 1701t.

The purpose of Section 235 is to assist lower income families acquire homeownership. The program helps eligible homeowners obtain mortgage financing from private lenders. The government guarantees repayment of the loan and makes monthly mortgage assistance payments to lenders to reduce homeowner interest payments. To qualify for assistance payments, the homeowner must meet certain requirements. Section 1715z(h) provides that the family income not exceed ninety-five percent of the median income for the area, as determined by the Secretary. Section 1715z(i)(3)(E) provides that a homeowner must make a down payment of three percent of the cost of acquisition. Section 1715z(i)(2) also expressly incorporates the eligibility requirements of Section 1715*l* (d)(2). Section 17151(d)(2) provides, *inter alia,* that "if the mortgagor is the owner and an occupant of the property, such mortgagor shall to the maximum extent feasible be given the opportunity to contribute the value of his labor as equity in such dwelling."

Section 1715z was amended in 1980 to require the recapture of assistance payments from the mortgagor under certain circumstances. The statute now provides:

The Secretary shall provide for the recapture of an amount equal to the lesser of (i) the amount of assistance actually received under this section, ... or (ii) an amount equal to at least 50 per centum of the net appreciation of the property, as determined by the Secretary. For the purpose of this paragraph, the term "net appreciation of the property" means any increase in the value of the property over the original purchase price, less the reasonable costs of sale, the reasonable costs of improvements made to the property, and any increase in the mortgage amount as of the time of sale over the original mortgage balance due to the mortgage being insured pursuant to section 1715z–10 of this title. Notwithstanding any other provision of law, any such assistance shall constitute a debt secured by the property to the extent that the Secretary may provide for such recapture.

12 U.S.C. § 1715z(2)(A) (Supp.1987)

Pursuant to this statute, the Secretary promulgated 24 C.F.R. § 235.12 which contains an identical formula for recapture and an identical definition of "net appreciation of the property." The rule provides for recapture at certain times including when the mortgagor requests a release of the Secretary's lien on the property. 24 C.F.R. § 235.12(a)(3).

In the present case, plaintiffs are mortgagors participating in the Government's housing assistance program. According to the complaint, plaintiffs purchased property in Seekonk, Massachusetts in 1981, for $45,200. On October 1, 1982, they executed a note and first mortgage for $38,060 to the Industrial National Bank of Rhode Island (now Fleet National Bank). On the same day, under the HUD program at is-

sue here, plaintiffs executed a note and a second mortgage in favor of the Secretary of HUD securing the Mortgage Assistance payments. Under the terms of the note, plaintiffs were obligated to repay the mortgage assistance pursuant to Section 235 and "in accordance with regulations prescribed by the Secretary in 24 C.F.R. 235.-12."

In the years that followed, plaintiffs added to the value of the property by completely finishing the basement into three useable rooms. They added a covered deck, storm windows and storm doors. They further improved the property through landscaping and fencing the yard. All labor was their own. A recent appraisal valued the property at $65,000.

In March 1986 plaintiffs sought a determination of the amount of recapture that HUD would require to release the Secretary's lien on their property. Plaintiffs claimed that they only owed fifty percent of the net appreciation of the property which they calculated as follows:

First they calculated the gross appreciation:

| | |
|---|---|
| Present value | $65,000 |
| − Purchase price | 45,200 |
| Gross Appreciation | $19,800 |

Next, they claimed certain deductions as reasonable costs of improvements:

| | |
|---|---|
| Materials | $ 6,791.39 |
| Labor | 6,815.00 |
| Costs of Sale | 3,900.00 |
| Total deductions | $17,506.39 |

They then calculated net appreciation:

| | |
|---|---|
| Gross appreciation | $19,800.00 |
| − Deductions | 17,506.39 |
| Net appreciation | $ 2,293.61 |

Finally, they calculated fifty percent of net appreciation to be $1,146.80. Plaintiffs submitted a check to HUD in this amount.

On April 8, 1986 HUD's Boston office, determined that plaintiffs had improperly calculated the recapture amount. That of-

fice reasoned that plaintiffs had improperly deducted the value of plaintiffs' labor in improving the property and the costs of sale. They calculated the amount owed as follows:

| | |
|---|---|
| Present value | $65,000 |
| − Purchase price | 45,200 |
| Gross Appreciation | $19,800 |
| Less deductions: | |
| Materials | $ 5,565.38 |
| Labor | not allowed |
| Costs of Sale | not allowed |
| Net Appreciation | $14,234.62 |
| 50% of Net Appreciation | $ 7,171.31 |

The Boston office returned to plaintiffs their check for $1,146.80.

Plaintiffs appealed the decision of the Boston office to the Department's main office in Washington. On May 30, 1986 the Washington office affirmed the initial determination. On June 4, 1986 a final appeal was sent to HUD. On June 30, 1986 HUD informed plaintiffs that the decision that no credit would be given for their "sweat equity" was final.

Having exhausted their administrative remedies, plaintiffs filed a complaint in this Court seeking injunctive and declaratory relief. Specifically, plaintiffs requested that this Court declare the Secretary's interpretation of 24 C.F.R. 235.12 to be unauthorized by law, and to interpret the relevant statutes, determine the appropriate recapture amount and order defendant to release the lien upon payment of the appropriate amount. Plaintiffs alleged that the Court had subject matter jurisdiction under 28 U.S.C. § 1331(a); that the action arises under 12 U.S.C. § 1715l (d)(2) and that it was brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Venue was based on 28 U.S.C. § 1391(e).

On November 16, 1987 defendants moved to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim, and for lack of venue. Essentially, defendant contends that the plaintiffs seek equitable relief based upon a mortgage con-

tract between the parties. Defendant claims that because the action is founded upon a contract with the United States, the Tucker Act, 28 U.S.C. § 1346(a)(2), provides the exclusive basis for jurisdiction. Moreover, under the Tucker Act the district court is limited to awarding damages and cannot grant the equitable relief sought here. Finally, under the Tucker Act the action must be brought in the jurisdiction where the plaintiff resides—here, Massachusetts. 28 U.S.C. §§ 1346, 1402.

In their objection to defendant's motion to dismiss, plaintiffs argue that "this matter is not a simple contract dispute, rather it is a dispute over the interpretation of defendant's guidelines as applied to a contract existing between the plaintiffs and the defendant." Plaintiffs argue that, because they are not seeking money damages, the Tucker Act's limitation of jurisdiction, relief and venue are irrelevant. Plaintiffs claim jurisdiction and waiver of sovereign immunity under 28 U.S.C. § 1331(a) and 5 U.S.C. § 702. On December 10, 1987 the Court heard oral arguments and took the case under advisement. The matter is now in order for decision.

*Jurisdiction*

■ To establish the jurisdiction of a federal court over a suit against the United States, it must be shown that the court has subject matter jurisdiction of the issues raised by the suit, that the United States has waived its immunity for suits of that kind, and that the United States has consented to be sued in the paticular court. " 'The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *Massachusetts v. Departmental Grant Appeals Bd.,* 815 F.2d 778, 781 (1st Cir.1987) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

Subject matter jurisdiction and waiver of sovereign immunity were granted to claims for nonmonetary relief for unlawful actions of federal agencies, or their officers or employees, by the 1976 amendments to 5 U.S.C. § 702 and 28 U.S.C. § 1331. *Id.* Section 1331, as amended, abolished the amount-in-controversy requirement for claims against the United States. Section 702, not itself an independent source of jurisdiction, waived the defense of sovereign immunity for claims arising under § 1331 not involving monetary relief. 5 U.S.C. § 702 now provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, that any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

"Congress intended by the combination of the '1976 amendments to § 702 of the APA and 28 U.S.C. § 1331 to make § 1331 the vehicle for actions "seeking relief other than money damages...."' " *Id.* at 782 (quoting *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983)); *See also* H.R.Rep. No. 94–1656, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News, 6121, 6123–24.

To determine whether this case is properly brought under § 702 and § 1331(a), it

must first be determined whether this case is more properly brought under the jurisdiction provided for by the Tucker Act. As the First Circuit stated in *Departmental Grant Appeals Bd., supra* at 782–783, when Congress limited actions under 702 to those seeking relief "other than money damages" it intended to exclude those cases which come under the Tucker Act.

Under the Tucker Act, the district courts have original jurisdiction, concurrent with the Court of Claims, of claims against the United States "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2).

The language of the Tucker Act, as interpreted by the courts, restricts the number and type of cases in which its jurisdiction may be involved. The Supreme Court has held that the Tucker Act authorizes suits against the United States only for money damages not for declaratory or other relief. *Lee v. Thorton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975). A plaintiff may not avoid Tucker Act jurisdiction, however, by phrasing a claim for damages in terms of declaratory and injunctive relief. *Hahn v. United States*, 757 F.2d 581 (3d Cir.1985); *Metadure Corp. v. United States*, 490 F.Supp. 1368 (S.D.N.Y.1980). In the present case, the defendant characterizes the matter as a claim founded upon a mortgage contract with the United States. Thus, it asserts the case is properly brought only under the Tucker Act. Plaintiffs, on the other hand, insist that the case is one seeking review of the interpretation and application of the Secretary's regulations promulgated under the National Housing Act and is properly brought under 28 U.S.C. § 1331 and 5 U.S.C. § 702.

As commentators have noted, in determining the relationship between the Tucker Act and the 1976 amendments to § 702 and § 1331, "difficult problems undoubtedly will arise in trying to draw a line between actions that basically are contractual disputes and those seeking to rectify alleged official misbehavior." Wright, Miller, & Cooper, 17 *Federal Practice and Procedure* § 4101 at 210. The First Circuit has warned that "where a claim may more properly be characterized as a § 702 case of official misconduct for which a district court may assert jurisdiction under 28 U.S.C. § 1331, courts should 'be careful not to subvert the congressional objectives underlying the enactment of the judicial review statute by allowing the government to give an overly expansive scope to the notion of claims "founded upon" contract.'" *Departmental Grant Appeals Bd., supra* at 785 (quoting *id.*)

"[A] prime purpose of judicial review of administrative agencies must be to insure compliance with congressional policy as expressed in both the language of the enabling act and its legislative history." *Estate of Applebaum v. Commissioner of Internal Revenue*, 724 F.2d 375, 381 (3d Cir.1983) (Adams, J., concurring); *United States v. Nesline*, 590 F.Supp 884, 887 (D.Md.1984) (same).

In the present case Congress has provided that a mortgagor under the provisions of the National Housing Act relevant here "shall to the maximum extent feasible be given the opportunity to contribute the value of his labor as equity in such dwelling." 12 U.S.C. § 1715*l* (d)(2) (incorporated by 12 U.S.C. § 1715z(i)(2)). The Secretary, however, has determined that the value of a mortgagor's labor is not a reasonable cost of improvement to property within the meaning of the National Housing Act and the regulations promulgated thereunder. 24 C.F.R. § 235.12. In light of the congressional policy of encouraging self-help techniques, *see* 12 U.S.C. § 1701t, and specifically encouraging mortgagors to contribute the value of their labor as equity, there is a very real question as to whether the Secretary has acted contrary to the clearly expressed intent of Congress.

Notably, plaintiff does not here seek money damages for breach of contract nor specific relief such as reimbursement from the United States for monies paid. *See Departmental Grant Appeals Bd., supra*

at 784. (state claims for reimbursement from the United States for expenses of providing court-ordered medicaid abortions fell within Tucker Act). Thus, the present case appears to be most properly characterized as a suit seeking to rectify official misconduct and not a suit founded on a contract for money damages against the United States. Thus, this Court has jurisdiction under 28 U.S.C. § 1331(a) with a waiver of sovereign immunity under 5 U.S.C. § 702. The Tucker Act is not applicable.

### Cause of Action Stated

■ In making this ruling, this Court notes that the agency action challenged here is not committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2). *In Hahn v. Gottlieb*, 430 F.2d 1243, 1251 (1st Cir. 1970), the First Circuit held that the approval of rents for federally subsidized housing was a matter "committed to agency discretion by law within the meaning of the A.P.A. and thus not subject to judicial review." In *Hahn*, tenants of federally subsidized low and moderate income housing sought an injunction restraining the Federal Housing Administration from approving rent increases pending an opportunity for the tenants to be heard. The Court recognized a strong presumption in favor of judicial review which is overcome only by "clear and convincing evidence" that Congress intended to cut off review above the agency level. *Id.* at 1249. (citations omitted). After reviewing the complexities of setting appropriate rents the Court stated that "the inappropriateness of judicial review, its minimal utility in safeguarding plaintiffs' rights, and its adverse impact on agency operations all provide 'clear and convincing evidence' that Congress did not intend courts to supervise FHA rent decisions. We therefore hold that the approval of rents and changes is a 'matter committed to agency discretion by law,' and thus not subject to judicial review." *Id.* at 1251. However, the Court emphasized that in so holding "we do not reach the question whether courts may intervene in those rare cases where the FHA has ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error." *Id.*

In the present case, plaintiffs have essentially alleged that the Secretary has ignored a plain statutory duty. The Secretary's determination that the value of a mortgagor's labor is not a "reasonable cost of improvement to the property" arguably ignores the plain statutory duty that the mortgagor "to the maximum extent feasible be given the opportunity to contribute the value of his labor as equity" in the mortgaged property. 12 U.S.C. § 1715*l* (d)(2) (incorporated by 12 U.S.C. § 1715z(i)(2)). Such alleged official misconduct is one properly subject to judicial review. *See Chevron U.S.A., Inc. v. National Res. Def. Council*, 467 U.S. 837, 845 n. 9, 104 S.Ct. 2778, 2783 n. 9, 81 L.Ed.2d 694 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). Therefore, plaintiffs' complaint states a cause of action on which relief can be granted.

### Venue

■ Finally defendant argues that the case should be dismissed for lack of venue because the Tucker Act requires that the action be brought in the jurisdiction where the plaintiffs reside—here Massachusetts. *See* 28 U.S.C. § 1402. As discussed above, however, this Court has jurisdiction not under the Tucker Act but under 28 U.S.C. § 1331(a). Accordingly, the relevant venue provision is set forth in 28 U.S.C. § 1391(e). That section provides:

A civil action in which each defendant is an officer or employee of the United States or an agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which:

(1) a defendant in the action resides, or

(2) the cause of action arose, or

(3) any real property involved in the action situated, or

(4) the plaintiff resides if no real property is involved in the action.

In the present action, the defendant, the Secretary of HUD, is deemed to reside where his official duties are performed: the District of Columbia. *See Lamont v. Haig*, 590 F.2d 1124, 1128 n. 19 (D.C.Cir. 1978). The real property is situated in Massachusetts and the plaintiffs reside in Massachusetts. Venue could only be appropriate here, therefore, if the cause of action arose in Rhode Island.

As the Fifth Circuit has held, a cause of action can arise in several forums for the purposes of venue and "the court should not oppose the plaintiff's choice of venue if the activities that transpired in the district where suit is brought were not insubstantial and the forum is a convenient one, balancing the equities and fairness to each party." *Florida Nursing Home Association v. Page*, 616 F.2d 1355, 1361 (5th Cir. 1980), *cert. denied* (as to venue), 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 *rev'd on other grounds*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). In the present case the activities that transpired in Rhode Island in connection with this matter are not insubstantial. This claim arose out of the mortgage assistance agreement between the parties. That agreement was executed in Rhode Island on October 1, 1981. Furthermore, that agreement insured a home mortgage loan made to the plaintiffs by a Rhode Island bank. Notably, the defendant has not argued that the present forum is inconvenient, nor does this Court see why it would be. Most of the witnesses and documents relevant to this case are located in Rhode Island or a short distance away in Massachusetts. The United States Attorney, of course, has an office here in Providence. For the foregoing reasons, this Court holds that venue is proper in Rhode Island.

### Conclusion

Because this case is properly viewed as one seeking judicial review of administrative action that is alleged to be contrary to statutory authority, this Court has jurisdiction under 28 U.S.C. § 1331(a), waiver of sovereign immunity under 5 U.S.C. § 702 and venue under 28 U.S.C. § 1391(e). Defendant's motion, therefore, is denied.

*It is so Ordered.*