Juli M. ECKMANN, Plaintiff
and Appellant,

v.

NORTHWESTERN FEDERAL SAVINGS
& LOAN ASSOCIATION, Defendant
and Appellee.

Civ. No. 880184.

Supreme Court of North Dakota.

Feb. 20, 1989.

---

Brian W. Nelson (argued), and Tom E. Eastman, of Eastman Law Offices, Fargo, for plaintiff and appellant. Appearance by Tom E. Eastman, Fargo.

Franklyn G. Gokey, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellee.

VANDE WALLE, Justice.

Juli Eckmann appealed from a summary judgment dismissing her action against Northwestern Federal Savings and Loan Association [Northwestern]. We affirm.

In June of 1983 Eckmann agreed to purchase a townhouse in Fargo from Carey and Anne Pavlish. The agreement was contingent on Eckmann assuming the Pavlishes' loan, which was subsidized under a program administered by the Department of Housing and Urban Development [HUD]. In addition, the Pavlishes took back a second mortgage in the amount of $8,000.

The Pavlishes' loan with Northwestern was what is known generally as a "Section 235" loan. Under this program, the Federal government subsidizes a portion of the interest payable by qualified borrowers on home loans obtained through conventional lenders. When the home is subsequently sold to a nonqualifying purchaser or is rented for a period of more than one year, HUD may recapture from the borrower the amount of interest assistance it has actually paid on behalf of the borrower or fifty percent of the net appreciation of the property, whichever is less. 12 U.S.C.A. § 1715z(c)(2)(A) (Supp.1988); 24 C.F.R. § 235.12 (1988). See also, *Thibodeau v. Pierce*, 683 F.Supp. 15, 17 (D.R.I.1988).

Because Eckmann also qualified for assistance under the Section 235 program, she was eligible to assume the Pavlishes' loan and the recapture provisions would not be triggered. Northwestern prepared the documents necessary for Eckmann's assumption of the loan and mortgage, and the closing occurred on July 8, 1983. At the closing, Eckmann signed a "Notice to Buyer" which explained the recapture provisions. Eckmann also signed a note payable to the Secretary of HUD which provided for payment of recapture up to a total amount of $91,489.49, but limited to the lesser of assistance actually provided by HUD or one-half of the net appreciation of the property. This note also provided that the amount of recapture would include the amount of any assistance "paid by the Secretary on behalf of any homeowner, other than the borrower," pursuant to the assumed mortgage. Thus, in assuming the loan and mortgage, Eckmann also assumed the contingent liability for recapture of the amount of assistance previously paid by HUD on the Pavlishes' loan on the property.

At the time of the closing HUD had provided assistance on the Pavlish mortgage in the amount of $5,943.06. This figure was not contained in any of the documents provided to Eckmann at the closing, and she was not otherwise advised of the amount.

Eckmann lived in the townhouse while attending college and, as graduation approached, she decided to sell it. Eckmann discussed the sale of the property with some friends involved in real estate, who advised her that she had paid too much for the property and that she had been "ripped off." They also advised Eckmann that she could recoup some of her loss on the property by discontinuing payments on her loan and "holding over" for up to a year.[1] Eckmann conceded in her deposition that she took her friends' advice, stopped making payments in July of 1985, and continued living in the townhouse until May of 1986 in an effort to recover some of her down

---

1. The advice presumably had reference to Section 32–19–06, N.D.C.C., which entitled the owner or debtor to the possession, rents, use, and benefit of the real property sold at foreclosure sale for a period of one year.

payment. Eckmann also admitted that she never got a written appraisal of the property, never listed the property for sale, never placed ads in newspapers, and never placed a "For Sale" sign in front of the townhouse. Northwestern eventually foreclosed its mortgage.

Eckmann commenced this tort action for deceit, alleging that Northwestern had a duty to inform her of the amount of the contingent liability she was assuming. She asserts that she would not have entered into the agreement if she had known the amount of the contingent liability, and as damages she seeks recovery of her down payment, all monthly payments she made, her payments made on the second mortgage to the Pavlishes, her costs in defending the foreclosure action, damages for injury to her reputation and credit standing, and punitive damages. Northwestern moved for summary judgment. The district court determined that there was no genuine issue of material fact and granted the motion. On appeal Eckmann asserts that Northwestern had a duty to disclose the exact amount of the contingent liability she was assuming and that material issues of fact exist which should preclude summary judgment.[2]

Summary judgment under Rule 56, N.D. R.Civ.P., is a procedural device available for the prompt and expeditious disposition of cases without trial when, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. E.g., *Hellman v. Thiele*, 413 N.W.2d 321 (N.D.1987). Although the party seeking summary judgment has the

burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon his pleadings but must present competent evidence by affidavit or other comparable means which raises an issue of material fact. E.g., *Hillesland v. Federal Land Bank Association of Grand Forks*, 407 N.W.2d 206 (N.D.1987). The plain language of Rule 56 requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of a factual dispute as to an essential element of his claim and on which he will bear the burden of proof at trial. *Union State Bank v. Woell*, 434 N.W.2d 712 (N.D.1989); *Production Credit Association of Fargo v. Foss*, 391 N.W.2d 622 (N.D.1986). When no pertinent evidence on an essential element is presented to the trial court in resistance to the motion for summary judgment, it is presumed that no such evidence exists. *North Dakota Public Service Commission v. Valley Farmers Bean Association*, 365 N.W.2d 528 (N.D.1985).

Northwestern asserts that Eckmann failed to present any evidence of damage caused by Northwestern's alleged nondisclosure. Proof of actual damage proximately caused by the misrepresentation or nondisclosure is an essential element of a tort action for deceit. *Olson v. Fraase*, 421 N.W.2d 820 (N.D.1988); *Buehner v. Hoeven*, 228 N.W.2d 893 (N.D.1975); *Verry v. Murphy*, 163 N.W.2d 721 (N.D.1968); *Beare v. Wright*, 14 N.D. 26, 103 N.W. 632 (1905); Prosser, Law of Torts § 110 (5th ed. 1984). It was therefore incumbent upon Eckmann to present competent evidence of actual damage proximately caused

---

**2.** The trial court did not specifically address the various issues raised by the parties, and refused to express the basis or reasoning for its conclusion when requested to do so by Eckmann's counsel. We have previously expressed our concern over orders granting summary judgment where the trial court gives no explanation of its reasoning and thus provides no appropriate basis for appellate review. *Herzog v. Yuill*, 399 N.W.2d 287 (N.D.1987). We have, under such circumstances, reversed the summary judgment and remanded for a redetermination of the issues. See *Herzog v. Yuill, supra*. We are convinced, however, that no useful purpose would be served by remanding to the district court for elucidation because we can conclude from the record on appeal that Eckmann has failed to present competent evidence of any damage proximately caused by Northwestern's nondisclosure of the amount of assistance paid by HUD on behalf of the Pavlishes. We will not require the parties to bear the expense of further proceedings in the district court, and possibly of another appeal, because the district court did not amplify the reasons for its summary-judgment order.

by Northwestern's alleged nondisclosure in order to prevent the entry of summary judgment. *See Union State Bank v. Woell, supra; Production Credit Association of Fargo v. Foss, supra.*

The general injuries pleaded by Eckmann all relate directly to the loss of the townhouse through foreclosure: her down payment, monthly mortgage payments, payments on the second mortgage, costs of defending against the foreclosure action, and injury to reputation and credit standing. Eckmann asserts that these injuries were caused by the failure to disclose the amount of the contingent recapture liability because, she claims, she would not have entered into the agreement if she had known the amount of the contingent liability.

■ This court has previously rejected such an all-encompassing concept of damage in deceit cases:

> "These cases seem to proceed upon the theory advocated by the respondent in this case—that the entire loss resulting from a contract induced by false representation is proximately caused by the deceit, because the contract would not have been made if deceit had not been practiced. For the reasons hereinbefore stated, that theory is, in our opinion, erroneous." *Beare v. Wright, supra,* 103 N.W. at 635.

It is clear from *Beare v. Wright, supra,* that not all losses resulting from a fraudulently induced contract will be recoverable in an action for deceit. Losses brought about by other factors unrelated to the misrepresentation or nondisclosure do not afford a basis for recovery. Prosser, Law of Torts, *supra,* § 110. Only the damage which is proximately caused by the specific misrepresentation or nondisclosure will be recoverable.

■ Eckmann has presented no evidence which shows a causal connection between the nondisclosed contingent liability amount and the foreclosure. Eckmann candidly admitted in her deposition that she quit making payments on the property on

the advice of friends that she could recoup some of her down payment by discontinuing payment and holding over. She presented no evidence to show that her decision to stop making payments and allow foreclosure upon the property was in any way influenced by the amount of the contingent liability.

In addition, Eckmann failed to plead or present evidence of damage based upon the traditional "out-of-pocket" or "benefit-of-the-bargain" rules usually applied in deceit actions. See *Asleson v. West Branch Land Co.,* 311 N.W.2d 533 (N.D.1981). Under either of these theories, Eckmann would have to demonstrate that the nondisclosed amount of the contingent liability would have adversely affected the value of what she received under the contract. See Prosser, Law of Torts, *supra,* § 110. No such evidence was produced in opposition to the motion for summary judgment.

Eckmann also did not plead or produce evidence showing actual expenses proximately caused by the alleged nondisclosure. Eckmann never was required to pay any recapture to HUD, and by failing to attempt to sell her property she essentially prevented any possibility of her contingent liability ripening into an actual liability. By the terms of the note and HUD regulations, Eckmann could be required to pay recapture only if she sold the townhouse to a nonqualified buyer (or rented it out for over one year) and realized a profit over what had been paid by the Pavlishes for the property in 1981. By failing to attempt to sell the property and intentionally allowing it to be foreclosed, Eckmann precluded occurrence of the contingency which would have triggered her liability under the recapture provisions.

We conclude that Eckmann has failed to demonstrate a genuine issue of material fact on the issue of damage proximately caused by the alleged nondisclosure, an essential element of her claim. Summary judgment was therefore appropriate, and it is unnecessary to address the other issues raised by the parties.[3] The judgment is affirmed.

3. We express no opinion on Eckmann's assertion that, under guidelines contained in a HUD

ERICKSTAD, ·C.J., MESCHKE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

handbook, Northwestern had an affirmative duty to advise Eckmann of the amount of contingent recapture liability she was assuming when she assumed the Pavlishes' mortgage. We note, however, that the HUD handbook provision quoted by Eckmann does not specifically discuss disclosure of the *amount* of recapture assumed. Eckmann's argument that this handbook provision creates an affirmative duty on Northwestern to disclose the amount, and that failure to disclose gave rise to a tort action in deceit, is tenuous at best.