1999 ND 235

Bennie J. SCHNEIDER, Helen M. Schneider, and Monte K. Schneider, Plaintiffs and Appellants,

v.

Michael J. SCHAAF, and the Estate of Michael V. Schaaf through its Personal Representative, Clara Schaaf, Defendants and Appellees.

No. 990068.

Supreme Court of North Dakota.

Dec. 22, 1999.

Fintan L. Dooley, Bismarck, ND, for plaintiffs and appellants.

Lawrence A. Dopson, Zuger Kirmis & Smith, Bismarck, ND, for defendants and appellees.

MARING, Justice.

[¶ 1] Bennie, Helen, and Monte Schneider appealed from an order denying their motion for a new trial in a tort and breach of contract action brought against Michael J. Schaaf and the estate of Michael V. Schaaf. We conclude the trial court did not abuse its discretion in denying the Schneiders' motion for a new trial and in affirming summary judgment dismissal of their tort claims against the Schaafs. We affirm.

## I

[¶ 2] Bennie and Helen Schneider, both in their 70s at the time of trial, own a small farm in Stark County. In 1980, Michael J. Schaaf ("Michael") began farming with his father, Michael V. Schaaf ("Michael Sr."), who farmed in Morton County near Glen Ullin. In April 1982, Michael entered into a farm lease with Bennie to increase the Schaaf farming operation. Michael leased about 380 acres from Bennie from March 1, 1982 until October 15, 1984 for $18 per acre per year. Bennie leased the remainder of his crop acres to another farmer, Philip Messer. Other than grazing cattle and raising chickens on the property, Bennie and Helen essentially ceased active farming.

[¶ 3] In 1984, Michael combined Morton County land owned and operated by Michael Sr. with the acreage he had been leasing from Bennie so all of the land owned and operated by the Schaafs could be treated as one unit for purposes of signing up for federal farm programs. Bennie, as record owner, signed the Agricultural Stabilization and Conservation Service ("ASCS") "Farm Reconstitution" document allowing the reconstitution to take place. Messer also entered into an ASCS farm reconstitution and combined his own farm property with the land he leased from Bennie.

[¶ 4] The parties' lease arrangement continued through the years, but the terms were not always properly documented. Extensions to the lease were accomplished by crossing out the date on the original document and substituting a new date, and other terms and conditions were simply added to the original lease. Because each of the parties to the lease retained his own copy of the document and each added amendments to their copies, their respective versions of the lease differ. The parties agree the lease was validly extended through the 1989 crop year. Michael, however, contended a separate document signed by Helen in March 1988 covered the 1988, 1989, and 1990 crop years. The Schneiders contended Michael and his wife obtained Helen's signature on a "plain sheet" of paper and added the 1990 date to the document afterward.

[¶ 5] Before the 1989 crop year, the Schaafs separated their Morton County farming operation from the acreage Michael leased from Bennie, thereby returning Bennie's property to its prior status as a separate parcel with its own farm number. Messer, however, did not dissolve his combined units, and his leased portion of Bennie's land remained under the Messer farm number throughout 1989. During the summer of 1989, Bennie decided to place the acreage he had leased to Michael and Messer in the Conservation Reserve Program ("CRP") beginning in 1990. Because of the drought conditions prevalent during the late 1980s, CRP was considered a desirable alternative for area farmers. Land in the area was entered into CRP in 1990 at $35 per acre, as opposed to the $18 per acre Bennie had been receiving under his lease with Michael. ASCS records reflect Bennie included in his August 1989 CRP application and in his final CRP contract the land he had been leasing to Michael and Messer.

[¶ 6] Bennie and Helen had difficulty acquiring ASCS approval of their CRP application. Landlord and tenant rules and regulations developed for implementation of the CRP program sought to protect existing tenants who had leased property as an essential part of their farming operation. *See* 7 C.F.R. §§ 713.109 and 713.150 (1988). The rules provided when a landlord entered into a CRP contract, existing tenants were granted rights, even if their leases had expired the previous year. *See generally* 11 Harl, *Agricultural Law* § 91.03[4][e][vi] (1999). The landlord and tenant rules did not apply, however, if the operator or tenant "left the farm voluntarily without any coercion from the landlord," or if the operator or tenant "is replaced with a new operator or tenant...." ASCS CRP-1 Landlord and Tenant Provisions Handbook § 105B (1992). Bennie

approached Michael and Messer during summer 1989 and presented them with documents he had drafted waiving their rights under the CRP program, but both refused to sign the documents. Bennie then designated his son, Monte Schneider, as the replacement tenant on the CRP application, but Monte had driven bus for a number of years and had not participated recently in farming. Because the ASCS questioned Monte's qualifications as an operator, the office initially refused to accept him as a valid tenant.

[¶ 7] In April 1990, Michael's attorney at the time, Joseph A. Vogel, Jr., appeared with Michael before the ASCS committee and presented the lease extension agreement signed by Helen purporting to give Michael a lease on Bennie's property through the 1990 crop year. Minutes of the meeting reflect the committee ignored the lease extension agreement and approved Monte as a qualified operator for purposes of Bennie's CRP application. Consequently, the Schneiders received a 10–year CRP contract beginning in 1990 and received $35 per acre for their cropland.

[¶ 8] In April 1993, Bennie brought this action against Michael. Bennie alleged Michael had breached the terms of their lease agreement in 1989 by tearing down some fences, by failing to maintain sufficient summerfallow, by planting sunflowers on waterways, and by his "[w]eed damage control." Bennie also sought tort and punitive damages alleging Michael "intentionally violated the parties['] Agreement and [Bennie's] right to farm and ranch his own land at profit and did so in concert with others until at least 1990 . . . ." Bennie further alleged, to mitigate his losses from being unable to resume profitable farming operations, he enrolled his land in CRP and suffered net losses.

[¶ 9] Numerous amendments were made to the pleadings throughout the years, and Helen and Monte were added as plaintiffs and Michael Sr. was added as a defendant. The complaint grew to essentially allege the Schaafs had, through fraud, deceit, and other tortious actions, conspired with Messer and various ASCS office employees to drive the Schneider family out of the farming business. The Schneiders sought more than $150,000 in damages.

[¶ 10] The Schneiders also brought a separate action against Messer in Stark County with similar allegations asserting his participation in a conspiracy to force them out of the farming business. The Schneiders' action against Messer was dismissed on summary judgment in March 1998. The Schneiders also filed a complaint in federal court against four employees of the ASCS alleging a conspiracy to force them out of the farming business. The federal action, however, was dismissed upon the stipulation of the parties.

[¶ 11] In April 1998, the Schaafs moved for partial summary judgment dismissing the Schneiders' tort claims against them. The Schneiders had alleged counts against the Schaafs for "fraud and oppressions," "illegal acts in concert with each other," "tortious interference with business relations," and "conspiracy to interfere with civil rights" by age discrimination in violation of 42 U.S.C. § 1985(3). The trial court granted summary judgment dismissal of the tort claims, and the Schneiders' breach of contract action against the Schaafs was tried to a jury. The jury returned a special verdict finding the Schneiders were not damaged by placing their land in CRP. The jury further found, however, the Schaafs breached the terms of the farm lease and awarded the Schneiders $925 in damages. The Schneiders moved for a new trial, basically alleging they should have been allowed to present their tort claims against the Schaafs to the jury. The trial court denied the motion, and this appeal followed.

## II

[¶ 12] We review a trial court's denial of a N.D.R.Civ.P. 59 motion for a new trial under the abuse of discretion

standard. *Ali by Ali v. Dakota Clinic, Ltd.,* 1998 ND 145, ¶ 5, 582 N.W.2d 653. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Barta v. Hinds,* 1998 ND 104, ¶ 5, 578 N.W.2d 553.

[¶ 13] The major issue raised in the Schneiders' motion for new trial was whether summary judgment dismissal of the Schneiders' tort claims was appropriate. Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving the factual disputes would not alter the results. *Ohio Casualty Ins. Co. v. Horner,* 1998 ND 168, ¶ 9, 583 N.W.2d 804. On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion. *Narum v. Faxx Foods, Inc.,* 1999 ND 45, ¶ 15, 590 N.W.2d 454.

### A

[¶ 14] The Schneiders contend the trial court erred in granting summary judgment dismissal of their claim for fraud and deceit.

[¶ 15] The Schneiders' claim of fraud and deceit is premised on the alleged "plain sheet" lease extension agreement Michael had Helen sign in blank in 1988. They claim Michael later added the year 1990 to the document and changed the identity of the tenant to Michael Sr. They assert Michael and his attorney, Vogel, then presented this document to the ASCS claiming a right to farm Bennie's land in 1990. The Schneiders allege these actions by the Schaafs prevented them from receiving a farm number in spring 1990, prevented them from putting a farm program together and receiving an advance deficiency payment which would have allowed them to farm in 1990, forced them into placing their land into CRP, and thereby essentially prevented the Schneiders from ever returning to active farming.

[¶ 16] Fraud and deceit require misrepresentation of facts, suppression of facts, misleading another, or promising without intending to perform. *See* N.D.C.C. §§ 9–03–08 and 9–10–02; *Albrecht v. Walter,* 1997 ND 238, ¶ 17, 572 N.W.2d 809; *Delzer v. United Bank,* 1997 ND 3, ¶ 5 n. 2, 559 N.W.2d 531. It is well established in this jurisdiction, proof of actual damage proximately caused by the misrepresentation or nondisclosure is an essential element of a tort action for fraud and deceit. *See Sargent County Bank v. Wentworth,* 547 N.W.2d 753, 759 (N.D. 1996); *Conservatorship of Sickles,* 518 N.W.2d 673, 678 (N.D.1994); *Thompson v. Goetz,* 455 N.W.2d 580, 588 n. 3 (N.D. 1990); *Eckmann v. Northwestern Federal Sav. & Loan Ass'n,* 436 N.W.2d 258, 260 (N.D.1989); *Olson v. Fraase,* 421 N.W.2d 820, 827 (N.D.1988); *Buehner v. Hoeven,* 228 N.W.2d 893, 904 (N.D.1975); *Verry v. Murphy,* 163 N.W.2d 721, 731 (N.D.1968); *Federal Land Bank of St. Paul v. Koslofsky,* 67 N.D. 322, 329, 271 N.W. 907, 909 (1936); *Emanuel v. Engst,* 54 N.D. 141, 149, 208 N.W. 840, 843 (1925); *Sonnesyn v. Akin,* 14 N.D. 248, 255–56, 104 N.W. 1026, 1028 (1905); *Beare v. Wright,* 14 N.D. 26, 32, 103 N.W. 632, 634 (1905). A fraud or deceit which has injured no one cannot be made the basis of an action because courts do not " 'sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury.' " *Sonnesyn,* 14 N.D. at 256, 104 N.W. at 1028 (citation omitted).

[¶ 17] The Schneiders alleged the Schaafs, by fraudulently and deceitfully claiming the right to lease the property in 1990, delayed the Schneiders' receipt of a farm number from the ASCS, which, combined with the Schaafs' numerous breaches

of the lease agreement, forced them into placing their land in CRP and effectively prevented their return to active farming. During the trial on the breach of contract action, the Schneiders and the Schaafs presented evidence relating to whether the Schneiders would have fared better financially if they had actively farmed their property rather than received the $35 per acre in CRP payments. The jury returned a special verdict finding the Schneiders were not damaged by placing their land in CRP. This finding is tantamount to a finding there were no pecuniary damages stemming from any allegedly fraudulent or deceitful actions by the Schaafs.

■ [¶ 18] More important, however, assuming for purposes of argument the loss of the Schneiders' right to actively farm the land constitutes actual damages necessary to sustain an action for fraud and deceit, those actual damages must be proximately caused by the alleged fraudulent or deceitful acts of the Schaafs. *See Eckmann,* 436 N.W.2d at 261; *Beare,* 14 N.D. at 34–35, 103 N.W. at 635. In *Eckmann,* 436 N.W.2d at 261, this Court rejected an all-encompassing concept of damages in fraud and deceit cases:

> [N]ot all losses resulting from a fraudulently induced contract will be recoverable in an action for deceit. Losses brought about by other factors unrelated to the misrepresentation or nondisclosure do not afford a basis for recovery.... Only the damage which is proximately caused by the specific misrepresentation or nondisclosure will be recoverable.

*See also Beare,* 14 N.D. at 37, 103 N.W. at 636. It was therefore incumbent upon the Schneiders to present competent evidence that their inability to actually farm their land was proximately caused by Helen's execution of the "plain sheet" lease extension agreement and Michael's presentment of that lease to the ASCS committee.

[¶ 19] The Schneiders presented no evidence showing a causal connection between the activities involving the "plain sheet" lease extension agreement and their inability to actively farm their property in 1990. The record reflects the Schaafs separated the acreage Michael leased from Bennie from their Morton County farming operation before the 1989 crop year, returning the property to its prior status as a separate parcel with its own farm number. Messer, however, did not dissolve his combined units and return the land he leased from Bennie so it could receive a separate farm number. The delays in the ASCS office over Bennie's attempts to reconstitute his farm land and obtain his own farm number to qualify for federal farm programs were attributable to Messer's failure to release the land he leased from Bennie and the time it took to get that matter resolved. Indeed, Bennie candidly admitted at trial it was the ongoing dispute with Messer from October 1989 through May 1990 that prevented him from receiving a farm number which would have enabled him to qualify for federal farm programs. There is no indication of any involvement by the Schaafs in the Schneiders' failure to obtain a farm number.

[¶ 20] Michael and attorney Vogel's presentment of the allegedly fraudulent "plain sheet" lease extension agreement to the ASCS committee did not occur until April 1990, and dealt only with Bennie's efforts to have his land enrolled in CRP, which he now claims he did not want and was forced to apply for to mitigate damages from being unable to actively farm his property. In any event, the record shows the ASCS committee ignored the "plain sheet" lease extension agreement and approved Monte as a qualified operator on the same day for purposes of the CRP contract. After that contract was executed, the Schneiders were precluded from resuming their farming operation. The Schneiders have simply failed to produce any evidence of a causal connection between the Schaafs' allegedly fraudulent actions and the Schneiders' alleged damages.

[¶ 21] We conclude the trial court properly granted summary judgment dismissal of the Schneiders' fraud and deceit claim.

### B

[¶ 22] The Schneiders claim the Schaafs are liable under the "concerted action" provisions of N.D.C.C. § 32–03.2–02. This statute makes the liability of each of several tortfeasors separate and several, instead of joint, unless they acted in concert in causing the injury. *Target Stores v. Automated Maintenance*, 492 N.W.2d 899, 902 (N.D.1992). The Schneiders contend the Schaafs are liable for the actions of Messer and the Stark County executive director and staff of the ASCS office because they all "encouraged, ratified and adopted at least a part of each other's acts" in delaying the Schneiders' attempt to resume cash grain operations. We reject the Schneiders' argument for two reasons.

[¶ 23] First, N.D.C.C. § 32–03.2–02 does not create an independent basis of tort liability, but deals only with the allocation of damages among those already at fault. *Hurt v. Freeland*, 1999 ND 12, ¶ 21, 589 N.W.2d 551. Moreover, to constitute concerted action, the Schneiders were required to present evidence manifesting a common plan to commit a tortious act where the participants knew of the plan and its purpose and took substantial affirmative steps to encourage the achievement of the result. *See Hurt*, 1999 ND 12, ¶ 23, 589 N.W.2d 551; Restatement (Second) of Torts § 876. Here, the Schneiders presented no evidence to raise even an inference that the Schaafs, Messer, ASCS staff, or anyone else had a common plan to harm the Schneiders.

[¶ 24] We conclude the trial court did not err in granting summary judgment dismissal of the Schneiders' concerted action claim.

### C

[¶ 25] The Schneiders also contend the trial court erred in granting summary judgment dismissal of their claim for negligent or intentional interference with prospective business advantage. *See generally Fankhanel v. M & H Const. Co., Inc.*, 1997 ND 20, ¶ 11, 559 N.W.2d 229; *Fox v. Higgins*, 149 N.W.2d 369, 370–71 (N.D. 1967); Prosser and Keeton, *The Law of Torts* § 130 (5th ed. 1984) ("Prosser and Keeton"). The Schneiders allege the presentation by Michael and attorney Vogel of the "plain sheet" lease extension agreement to the ASCS committee in April 1990, and their argument that Bennie and Monte were not qualified farmers to engage in any contracts with the ASCS, constitute interference with their prospective business advantage.

[¶ 26] As Prosser and Keeton, § 130 at p. 1010 n. 49 (emphasis in original), explain, actual damages are an essential element of the tort of interference with prospective business advantage:

> Damages must be proven. *Rager v. McCloskey*, 305 N.Y. 75, 111 N.E.2d 214 (1953).... And it is not enough that the plaintiff shows a reasonable possibility that he would have obtained some economic benefit in the absence of the defendant's intervention; he must instead show that he *would* have obtained the benefit, or in other words must prove his case by stringent standards. *Optivision v. Syracuse Shopping Center*, 472 F.Supp. 665 (N.D.N.Y.1979); *Union Car Advertising Co. v. Collier*, 263 N.Y. 386, 189 N.E. 463 (1934)....

[¶ 27] In this case, the Schneiders failed to present any evidence they were damaged by anything Michael or Vogel told the ASCS committee. The committee ignored their comments and approved Monte as a qualified operator for purposes of Bennie's CRP contract. After that contract was signed, the Schneiders were prevented from actively farming their property. The actions of Michael and Vogel did nothing to further delay their attempts to farm their property.

[¶ 28] We conclude the trial court did not err in granting summary judgment dismissal of the Schneiders' claim of intentional or negligent interference with prospective business advantage.

D

[¶ 29] The Schneiders contend the trial court also erred in dismissing their 42 U.S.C. § 1985(3) action alleging an age discrimination conspiracy. The Schneiders said in affidavits they were told by ASCS staff that they should allow younger farmers to farm their property.

[¶ 30] Assuming age classifications are subject to U.S.C. § 1985(3) proscriptions, to state a claim of civil rights conspiracy under the statute, the plaintiffs must allege and show: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The plaintiff must also assert "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The heart of a cause of action under 42 U.S.C. § 1985(3) is a conspiracy to interfere with a person's civil rights, and the essence of a conspiracy is an understanding or agreement between the conspirators. *Holdiness v. Stroud*, 808 F.2d 417, 424–25 (5th Cir.1987). Plaintiffs who assert a conspiracy claim under the civil rights statutes must plead the operative facts on which their claim is based; bald allegations that a conspiracy existed are insufficient. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991).

[¶ 31] Here, after more than five years of discovery, the Schneiders' claim of con-spiracy consists of the conclusory allegation that the Schaafs and others harassed, delayed and obstructed the Schneiders while acting in concert with or in conspiracy with one or another. There is no evidence of an understanding or agreement between the defendants, and there is no evidence of any acts the Schaafs performed in concert with Messer or the ASCS staff.

[¶ 32] We conclude the trial court did not err in granting summary judgment dismissal of the Schneiders' 42 U.S.C. § 1985(3) civil rights conspiracy claim.

E

[¶ 33] The Schneiders appear to contend, notwithstanding the summary judgment dismissal of their tort claims, they should have been allowed to present evidence relating to the tort claims in the breach of contract action. They argue if they had been allowed to present evidence of the "plain sheet" lease extension agreement the jury would not have found Michael credible and would have found they suffered economic loss from having their land in CRP because they would have been happier farming and should be compensated for their loss of happiness.

[¶ 34] We will not overturn a trial court's admission or exclusion of evidence on relevance grounds unless the trial court abused its discretion. *State v. Osier*, 1999 ND 28, ¶ 5, 590 N.W.2d 205. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. Even relevant evidence may be excluded under N.D.R.Ev. 403 if its probative value is substantially outweighed by the danger of unfairly prejudicing the defendant. *State v. Klein*, 1999 ND 76, ¶ 5, 593 N.W.2d 325. A trial court has broad discretion when ruling whether proffered evidence is relevant. *Goff v. Goff*, 1999 ND 95, ¶ 20, 593 N.W.2d 768.

A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process. *Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶ 18, 559 N.W.2d 204.

[¶ 35] After the trial court dismissed the Schneiders' tort claims, all that remained for trial was the Schneiders' breach of contract action against the Schaafs. Evidence relating to Helen's execution of the "plain sheet" lease extension agreement was irrelevant to the issues in the breach of contract action because the Schaafs did not lease the property in 1990. Any value that evidence might have had on Michael's credibility could have been found by the trial court to be outweighed by the prejudice and time it would have required to explore these peripheral allegations during the trial. We conclude the trial court did not abuse its discretion in refusing to allow the Schneiders to introduce evidence relating to their dismissed tort claims.

### III

[¶ 36] We have considered the Schneiders' other arguments and deem them to be without merit. Because we have concluded the trial court did not err in granting summary judgment dismissal of the Schneiders' tort claims, we further conclude the trial court did not abuse its discretion in denying their motion for a new trial.

[¶ 37] The order denying the Schneiders' motion for a new trial is affirmed.

[¶ 38] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.