2004 ND 162

**GRANDBOIS AND GRANDBOIS, INC., a corporation, and Linda and Edward Grandbois, Plaintiffs and Appellants**

v.

**CITY OF WATFORD CITY, City of Williston, County of Williams, County of Divide, County of McKenzie, political subdivisions; Watford City Police Department, Williston Police Department, Williams County Sheriff, Divide County Sheriff, McKenzie County Sheriff, Northwest Narcotics Task Force, and Kirk M. Sutton and Dale Hager, Defendants and Appellees.**

No. 20030250.

Supreme Court of North Dakota.

Aug. 5, 2004.

Ralph A. Vinje of Vinje Law Firm, Bismarck, N.D., for plaintiffs and appellants.

Scott K. Porsborg of Smith Bakke Oppegard Porsborg Wolf, Bismarck, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Grandbois and Grandbois, Inc., and Linda and Edward Grandbois ("Grandbois") appeal from the district court's summary judgment in favor of the City of Watford City, City of Williston, County of Williams, County of Divide, County of McKenzie, Watford City Police Department, Williston Police Department, Williams County Sheriff, Divide County Sheriff, McKenzie County Sheriff, Northwest Narcotics Task Force, Kirk M. Sutton, and Dale Hager (collectively "Watford City"). The district court did not abuse its discretion by denying the Grandbois' mo-tion to amend their complaint to include a theft of property cause of action, and the district court properly determined, as a matter of law, no genuine issues of fact existed for presentation to a jury. We affirm.

I

[¶ 2] The Grandbois sued Watford City for fraud, alleging damages caused by undercover drug enforcement agents working as bartenders in the Grandbois' bar.

[¶ 3] The Northwest Task Force, also known as the Northern Alliance for Reducing Controlled Substances Task Force ("Task Force"), was created under an agreement among several county sheriff departments and city police departments and allegedly functions under the direct supervision of the North Dakota Bureau of Criminal Investigation. Kirk Sutton worked as an undercover agent for the Task Force. Dale Hager was hired by the Task Force as a confidential informant to assist Sutton in his undercover duties.

[¶ 4] Edward and Linda Grandbois own Grandbois and Grandbois, Inc. In 1997, the corporation opened a bar called Weekenders Nightclub & Lounge ("Weekenders") in Williston, North Dakota. Sutton and Hager applied for positions at Weekenders by completing employment application forms through Job Service of North Dakota. The application form contained the question, "Are you presently employed?" Sutton and Hager both answered, "No," indicating they were not currently employed, and they did not list the Task Force as a current or previous employer. In July 1997, the Grandbois hired Sutton and Hager to work as bartenders at Weekenders. The Task Force did not direct agents Sutton and Hager to apply at Weekenders, Sutton and Hager did not disclose they were undercover

agents working for the Task Force, and the Grandbois were not aware Sutton and Hager were Task Force agents. During that time, Sutton and Hager also worked at three other Williston bars. While working at Weekenders, agents Sutton and Hager performed undercover responsibilities, including arranging to buy methamphetamine and cocaine from patrons and employees of the bar.

[¶ 5] In March 1998, five months after Sutton and Hager left employment at Weekenders, the Task Force arrested approximately twenty individuals on drug-related charges. Four of the arrests were attributable to Sutton and Hager's undercover operation at Weekenders, but the arrests were not made on Weekenders' premises. Local newspapers did not disclose Weekenders as a drug operation location. The Grandbois alleged it became necessary to sell the bar at a significant loss after the arrests became public knowledge because people in the community stopped patronizing Weekenders under the belief the Grandbois were aware of the undercover drug operation.

[¶ 6] The Grandbois sued Watford City on May 23, 2000. In the complaint, the Grandbois based their action on fraud. The Grandbois allege Sutton and Hager committed fraud by failing to disclose they were undercover drug enforcement agents on their job application forms or during their employment. The Grandbois later amended the complaint to include exemplary damages against Sutton and Hager.

[¶ 7] Watford City moved for summary judgment on the grounds (1) the allegedly fraudulent statements were subject to an absolute or qualified privilege; (2) Watford City was entitled to discretionary immunity under N.D.C.C. § 32–12.1–03(3); (3) there was no proximate cause between the alleged fraud and the alleged injury as a matter of law; (4) Sutton and Hager were acting within the scope of their employment, and therefore the claims against them in their individual capacity were improper under N.D.C.C. § 32–12.1–04; and (5) the exemplary damages claim should be dismissed because exemplary damages are not allowed against political subdivisions under N.D.C.C. § 32–12.1–03(2). The Grandbois resisted the motion and submitted supporting affidavits of Jeannine Williamson, Ted Bellmore, Marti Koch, Malisa M. Williams.

[¶ 8] The district court entered its memorandum decision granting summary judgment in favor of Watford City on April 11, 2003. The judgment was subsequently filed on April 28, 2003. On April 23, 2003, under Rule 15, N.D.R.Civ.P., the Grandbois moved to again amend their complaint to include a claim for theft of property, alleging the claim of theft reflected new evidence discovered since the action had commenced. They also moved for reconsideration of the dismissal primarily based on the newly-discovered evidence. Through various supporting affidavits, the Grandbois asserted Hager intentionally broke bar equipment used to regulate the quantity of alcohol dispensed, and Hager and Sutter intentionally used bar property to lure drug dealers into spending time at Weekenders by over-pouring alcohol into drinks and by providing free drinks to individuals targeted in the drug operation. In a supporting affidavit, Charles Neff, the Grandbois' former attorney, attested:

> I am aware that the bar tenders [sic] hired by Ed and Linda Grandbois had been accused during their employment of giving away free drinks without the permission of the owners of the bar and had allegedly broken or discarded the measured pouring spouts placed on the liquor bottles by most bars for portion and cost control of the liquor sold by the bar. *I was contacted by my clients*

*regarding these allegations before the true identity of the bartenders as undercover drug agents was known to my clients, for the purpose of whether such conduct was legal grounds to terminate their employment* and whether such conduct would be grounds to contest their receipt of unemployment benefits. [Emphasis added.]

The district court denied the motions on June 3, 2003, holding the motion to amend the complaint was untimely, and the issues raised in the motion for reconsideration did not change the court's previous decision. An amended judgment was entered on June 25, 2003.

[¶ 9] The Grandbois appeal the amended judgment, arguing (1) the district court abused its discretion in denying the Grandbois' motion to amend the complaint to include a claim for theft of property; and (2) the district court improperly granted summary judgment by finding there were no genuine issues of fact for presentation to a jury.

## II

[¶ 10] The Grandbois argue the district court abused its discretion by denying their motion to amend the complaint to include a claim for theft of property.

[¶ 11] A motion to amend a complaint is governed under Rule 15(a), N.D.R.Civ.P., which provides, in part:

A party's pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party's pleading may be amended only by leave of court or by written consent of the adverse

party; and leave shall be freely given when justice so requires.

A trial court has wide discretion in deciding matters relating to amending pleadings after the time for an amendment as a matter of course has passed. *Severson v. Surita*, 506 N.W.2d 410, 412 (N.D.1993). On appeal, we will not reverse a trial court's grant or denial of a motion to amend absent an abuse of discretion. *Id.; see Farmers Alliance Mutual Ins. Co. v. Hulstrand Construction, Inc.*, 2001 ND 145, ¶ 10, 632 N.W.2d 473. In *Farmers Alliance Mutual Ins. Co.*, we explained:

Once a responsive pleading has been served, a complaint may be amended only by leave of court or by written consent of the adverse party. N.D.R.Civ.P. 15(a). A motion to amend a complaint under N.D.R.Civ.P. 15(a) lies within the sound discretion of the trial court, and we will not disturb the court's decision denying the motion absent an abuse of discretion. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 29, 590 N.W.2d 454; *Wishnatsky v. Huey*, 1997 ND 35, ¶ 11, 560 N.W.2d 878. A trial court abuses its discretion only when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Narum*, at ¶ 29.

*Id.* at ¶ 10.

[¶ 12] The district court denied the Grandbois' motion based on timeliness. In its order denying the Grandbois' motion to amend the complaint and motion for reconsideration, the court specifically found:

[T]he [Grandbois] were aware of the facts allegedly establishing the cause of action for theft of property in 1997. In addition, this case was scheduled for trial, which was to commence on April 29, 2003. Pursuant to this Court's order dated November 4, 2002, discovery was

complete as of April 7, 2003. As such, the Motion to Amend the Complaint is untimely and granting that motion would prejudice the defendants. Moreover, the Court finds nothing in the Motion for Reconsideration that changes the analysis or conclusions reached by the Court in its Memorandum of April 11, 2003.

[¶ 13] The Grandbois contend the trial court abused its discretion because the evidence supports that Sutton and Hager willfully destroyed property to steal alcohol from Weekenders while performing undercover agent duties, and the Grandbois did not discover the magnitude of the agents' theft until approximately the time of summary judgment.

[¶ 14] In this case, the time allowed for an amendment as a matter of law had passed, and the record supports the district court's denial based on timeliness was not an abuse of discretion. The evidence presented by affidavits establishes the Grandbois were aware of Sutton and Hager's alleged theft of property in 1997 while those agents were still employed at Weekenders. The Grandbois served their initial complaint on May 23, 2000, alleging a claim of fraud. The initial complaint did not include a claim for theft of property. In February 2002, the district court allowed the Grandbois to amend the complaint to include exemplary damages against Sutton and Hager. At that time, the Grandbois did not seek to amend the complaint to include a claim for theft of property. The district court scheduled trial to begin April 29, 2003, and set the deadline for discovery. The Grandbois did not move to amend the complaint to include a claim of theft until April 23, 2003, after the district court had issued its memorandum opinion granting summary judgment in favor of Watford City dismissing their fraud claim.

[¶ 15] The trial court was acting within its authority and, on this record, it did not abuse its discretion in denying the motion to amend the complaint as untimely.

III

[¶ 16] The Grandbois argue the district court erred in granting summary judgment dismissing their claim of fraud.

[¶ 17] Whether a district court properly granted summary judgment is a question of law subject to a *de novo* standard of review on the entire record. *Minn–Kota Ag Products, Inc. v. Carlson*, 2004 ND 145, ¶ 5. Under Rule 56, N.D.R.Civ.P., summary judgment is a device used to promptly and expeditiously dispose of an action without a trial if a party is entitled to judgment as a matter of law, and no dispute exists as to the material facts or the reasonable inferences to be drawn from the undisputed facts, or if resolving disputed facts will not change the result. *Minn–Kota Ag Products*, at ¶ 5; N.D.R.Civ.P. 56. The party seeking summary judgment has the burden of showing no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Azure v. Belcourt Public School District*, 2004 ND 128, ¶ 8, 681 N.W.2d 816. In *Azure*, we explained:

"In considering a motion for summary judgment, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate. *Matter of Estate of Otto*, 494 N.W.2d 169, 171 (N.D.1992). Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive standard of proof at trial

when ruling on a summary judgment motion. *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 474–75 (N.D. 1991). The party resisting the motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D. 1994). Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Matter of Estate of Stanton,* 472 N.W.2d 741, 746 (N.D.1991)."

*Azure,* at ¶ 8 (quoting *Hurt v. Freeland,* 1999 ND 12, ¶ 7, 589 N.W.2d 551). When the opposing party fails to present competent evidence on an essential element of the claim to the district court in opposing a motion for summary judgment, it is presumed such evidence does not exist. *Azure,* at ¶ 8 (citing *Koehler v. County of Grand Forks,* 2003 ND 44, ¶ 9, 658 N.W.2d 741). On appeal, we review the evidence in a light most favorable to the opposing party and give that party the benefit of all favorable inferences. *Id.*

[¶ 18] The trial court based its grant of summary judgment on the grounds that, as a matter of law, the Grandbois failed to show sufficient evidence essential to establish an actionable fraud, on which they would bear the burden of proof at trial; and, as a matter of law, the agents' alleged fraudulent and deceitful actions were protected under discretionary immunity afforded law enforcement officials. In its April 11, 2003, memorandum opinion, the district court held:

In this case, there is no evidence that Sutton or Hager willfully deceived Grandbois with the intent to induce Grandbois to alter their position to their injury. The alleged damages appear to be the result of the public finding out Sutton and Hager were law enforcement officials. The Court has a difficult time accepting the proposition that one can seek damages based on the conduct of Sutton and Hager carrying out their duties as undercover law enforcement agents because discretionary immunity prohibits such liability. N.D.C.C. § 32–12.1–03(3).

A

Fraud and Deceit

[¶ 19] In the complaint, the Grandbois' characterize their cause of action as fraud, claiming "Sutton and Hager obtained their jobs with Grandbois through the use of fraud." Throughout the pleadings, the parties refer to both fraud and deceit. In a responsive pleading, the Grandbois acknowledge fraud and deceit are separate actions: "Chapter 903[sic], speaking of fraud, and Chapter 910[sic], speaking of deceit, suggests that fraud applies when there is misrepresentations between parties to a contract. It would appear that the plaintiffs and the defendants were parties to a contract, however, the contract was oral." In its memorandum opinion, the district court applied its analysis under N.D.C.C. § 9–10–02, deceit. As we recognized in *Dewey v. Lutz,* 462 N.W.2d 435, 439 (N.D.1990), the statutory definitions of actual fraud and deceit are similar concepts. Technically, an actionable fraud brought under N.D.C.C. ch. 9–03 applies only when there is a contract between the parties; an actionable deceit brought under N.D.C.C. ch. 9–10 applies when there is no contract between the parties. *Dew-*

*ey,* 462 N.W.2d at 439. For the purposes of this case, the distinction between fraud and deceit is not relevant to our holding.

[¶ 20] Under North Dakota law, "[f]raud and deceit require misrepresentation of facts, suppression of facts, misleading another, or promising without intending to perform." *Schneider v. Schaaf,* 1999 ND 235, ¶ 16, 603 N.W.2d 869; N.D.C.C. §§ 9–03–08 and 9–10–02. "[P]roof of actual damage proximately caused by the misrepresentation or nondisclosure is an essential element of a tort action for fraud and deceit." *Schneider,* 1999 ND 235, ¶ 16, 603 N.W.2d 869. Section 9–10–03, N.D.C.C., damages for deceit, provides: "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers." Fraud and deceit that has not caused injury cannot be made the basis of an action because courts do not " 'sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury.' " *Schneider,* at ¶ 16 (quoting *Sonnesyn v. Akin,* 14 N.D. 248, 256, 104 N.W. 1026, 1028 (1905)). The parties do not dispute that agents Sutton and Hager misrepresented their employment status to obtain a bartending position by intentionally not disclosing they were undercover agents working on a drug enforcement operation. However, to overcome a grant of summary judgment, the Grandbois had the burden of presenting the trial court with competent evidence of actual damage and of establishing the actual damage was proximately caused by the alleged fraudulent or deceitful misrepresentation. *See Eckmann v. Northwestern Federal Sav. & Loan,* 436 N.W.2d 258, 260–61 (N.D.1989). The Grandbois failed to meet that burden.

## B

## Proximate Causation

[¶ 21] As we have noted, the Grandbois pled this case only as a claim of fraud premised on the agents' misrepresentation of their employment status on the job application form. Watford City moved for summary judgment, in part, on the grounds the Grandbois failed, as a matter of law, to establish a proximate cause connection between the alleged fraud and the alleged injury. The Grandbois resisted, contending they hired Sutton and Hager to work as bartenders at Weekenders based on the misrepresentation on the application form. Sutton and Hager performed undercover activities while working as bartenders. Sutton and Hager's undercover activities resulted in the arrest of customers and employees of Weekenders. The Grandbois alleged their business was damaged because it was necessary to sell Weekenders at a significant loss because of the actions of the drug agents. They assert, after the arrests became known to the public, people in the community believed the Grandbois were aware of the operation and stopped patronizing Weekenders.

[¶ 22] The Grandbois argue the trial court erred in holding they had failed to establish proximate cause as a matter of law by incorrectly finding there was no evidence presented showing Sutton and Hager "willfully deceived [the Grandbois] with intent to induce [the Grandbois] to alter their position to their injury." The Grandbois contend they have presented sufficient evidence from which a jury could decide Sutton and Hager intended to induce the Grandbois to alter the Grandbois' position to their injury, and have established a causal connection between Sutton and Hager's misrepresentation and the Grandbois' loss of business sufficient to overcome summary judgment for presen-

tation to a jury. In resisting the summary judgment, the Grandbois draw attention to an Affidavit of Ted Bellmore, a bar owner for whom Sutton had previously been employed; an affidavit of Jeannine Williamson, an individual arrested as a result of the operation whose charges were later dropped; an affidavit of Marti Koch, a Weekenders patron; and an affidavit of Malisa M. Williams, a Weekenders employee. We fail to see how that evidence establishes a causal connection between the misrepresentation on the position application and the alleged damages. In his affidavit, Ted Bellmore stated:

My business was drastically damaged by these actions. My reputation was also significantly tarnished.

The year in which Sutton worked for me, I had a gross income of approximately $750,000.

The year following his employment and subsequent arrests, my gross income had reduced to $500,000.

I was accosted by several different people who accused me of having been in league with Kirk Sutton and helping to set up my customers.

I believe this had a significant and damaging effect on my business.

I complained to the Sheriff . . . about the fact that a drug agent had been placed in my business without my knowledge, and informed him that it had drastically diminished my income.

In her affidavit, Jeannine Williamson, stated:

Kirk Sutton and Dale Hager were there and while we were discussing the drug bust, they told me that I should not be upset with them. They told me that I should be upset with Ed and Linda Grandbois, the owners of Weekenders, as they had hired Kirk and Dale to stop the drug traffic.

I was also told by Kirk Sutton that the Grandbois' had video surveillance cameras at Weekenders that proved the charges against me.

In her affidavit, Marti Koch, stated:

Weekenders was open Thursday–Saturday and on those nights, was always busy. Weekenders had live music and was the only lounge in the area that often had good, country bands playing, with a large dance floor area. It was a popular nightclub. It appeared to me that Weekenders was doing very well as a nightclub business in Williston.

After the drug bust took place, many of my friends would no longer go to Weekenders because of the fact that undercover agents had worked there and the entire community was aware of that fact. Many of my friends just didn't want to risk even being associated with the drug scene and after what happened at Weekenders, the reputation of the bar just went down the drain.

In her affidavit, Malisa M. Williams, stated:

I started working at Weekenders, . . . in November, 1997. I started dating one of the bartenders, Kirk Sutton.

\* \* \* \*

I was informed by another employee that Kirk was a cop and had busted a lot of people for drugs. Within an hour of that phone call, I had a customer show up at the Midway and tell me that Kirk had busted a lot of people for drugs and that I had to have known that he was a cop. . . .

\* \* \* \*

The evening after the drug bust, I worked at Weekenders. The clientele was much, much less than it had ever been since I had started working there. I was approached by customers that were there with warnings. Because of

the decline in business at Weekenders, I was let go.

\* \* \* \*

I went to Kirk's supervisor, Dick Hickman, and asked for help on two different occasions. I was told there was nothing he could do because what Kirk did in his personal life and in his private time was not his problem. I don't feel that Kirk and I were always on "his private time" because he took me to many, many parties where I now know drug contacts were made.

\* \* \* \*

I feel that what happened to Ed and Linda Grandbois, Weekenders, myself, and other employees that worked there, was reckless and put the lives of many people in danger. It also put many people out of jobs. Because of Kirk's lies and deceit, I have suffered unmeasurable emotional trauma and financial stress. I believe this drug bust hurt a lot of innocent people and even ruined some of their lives. . . .

In the motion resisting summary judgment, the Grandbois indicate they "have also discussed this matter with a Certified Public Accountant who believes there was a loss of business that was a direct result of the actions of drug agents. More information will be forthcoming as it is received from the Accountant." Such information was not filed with the district court.

[¶ 23] Giving the Grandbois the benefit of all favorable inferences, even if we assume the Grandbois lost business necessitating them to sell Weekenders at a loss, and those losses constitute actual damages, they still have failed to show those actual damages were proximately caused by Sutton and Hager's alleged fraudulent or deceitful act of misrepresenting their employment status on the position application form. The Grandbois have produced no evidence to prove causation.

In *Schneider v. Schaaf,* 1999 ND 235, ¶ 18, 603 N.W.2d 869 (citing *Eckmann v. Northwestern Federal Sav. & Loan Ass'n,* 436 N.W.2d 258, 261 (N.D.1989), relying on *Beare v. Wright,* 14 N.D. 26, 37, 103 N.W. 632, 636 (N.D.1905)), we held:

Not all losses resulting from a fraudulently induced contract will be recoverable in an action for deceit. Losses brought about by other factors unrelated to the misrepresentation or nondisclosure do not afford a basis for recovery. . . . Only the damage which is proximately caused by the specific misrepresentation or nondisclosure will be recoverable.

The record reflects Sutton and Hager were undercover agents who obtained positions as bartenders by misrepresenting their employment status on the application form. Sutton and Hager did not have a pre-existing suspicion of drug activities at Weekenders when they applied. They worked as bartenders at Weekenders from June to September of 1997. The Grandbois were satisfied with Sutton and Hager's work performance, but had noticed they over-poured alcohol and spoke to them about it. While working as bartenders, Sutton and Hager made contacts with individuals associated with drug activities and arranged for drug purchases. Some of the individuals associated with drug activity were employees of Weekenders and some were patrons. Sometime during their employment, Ed Grandbois was told by his daughter that she observed Sutton purchasing drugs outside Weekenders. Ed Grandbois confronted Sutton, but he chose to not terminate Sutton or Hager "[b]ecause of their work ability." In his deposition, Ed Grandbois referred to the agents as "absolutely great workers," he also stated "them two boys are good boys. Don't get me wrong. Them two boys are excellent boys. I just don't like what they

did to my business." Ed Grandbois testified he frequented the bar every evening and observed bar activities. He did not notice any drug activity at Weekenders and was not aware of drug activities until after the March 1998 arrests. Linda Grandbois testified that Sutton and Hager promoted the purchase and sale of drugs at Weekenders by "actively [seeking] out, I guess, parties at the end of the work evening." Over twenty individuals were arrested as a result of the Task Force operations. Four of those arrested could be attributed to operations at Weekenders. The press reports of the arrests did not reference Weekenders, and Sutton and Hager quit work at Weekenders before the arrests occurred. The Grandbois could only identify two individuals who complained about the undercover operation at Weekenders, Jeannine Williamson and Malisa M. Williams. Other than those two, Linda Grandbois testified Ed Grandbois told her many people "chewed him out," but neither she nor Ed Grandbois could identify them. The tax returns revealed a significant loss in 1997 and 1998 during Weekender's entire short existence. The Grandbois offer unsupported assertions that the loss increased after the arrests, but they failed to submit any financial records or other evidence showing the loss increased due to the arrests.

[¶ 24] The Grandbois were required to make a showing sufficient to establish a causal connection between the alleged fraud and the alleged damages on which they would bear the burden of proof at trial. The Grandbois have failed to show a causal connection between Sutton and Hager's misrepresentation on their application form and the Grandbois' alleged reduced business necessitating selling Weekenders at a loss.

## C

### Discretionary Immunity and Privilege

[¶ 25] Under the specific facts presented in this record, the Grandbois have failed to establish, as a matter of law, the agents committed fraud resulting in damage that was proximately related to the fraudulent or deceitful act. Therefore, we do not decide the issues raised relating to discretionary immunity and privilege.

## IV

[¶ 26] The district court did not abuse its discretion in denying the Grandbois' motion to amend the complaint to include a claim for theft of property; and the district court properly granted summary judgment by finding, as a matter of law, the Grandbois have failed to establish a causal connection between the alleged fraud and the alleged damages; therefore, no genuine issues of fact existed for presentation to a jury. We affirm the district court's summary judgment.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.